THOMAS E. MADDEN *vs.* MINNEAPOLIS & ST. LOUIS RAILWAY COMPANY.

July 18, 1884.

**Master and Servant—Duty of Master to provide Safe Instruments.—** The road of defendant having got into bad condition, it was engaged in general repairs of the same by resurfacing and taking up the old and putting down new ties and rails. Plaintiff was in its employment as brakeman on a gravel train engaged in drawing gravel for the purpose of such resurfacing, and while so employed was injured by a car, on which he was acting as brakeman, running off the track in consequence of its bad condition. *Held,* that the rule that it is the duty of a master to use reasonable care and skill to furnish his servants safe and suitable instruments and means to perform the service in which they are engaged, applies to the case. In that regard the duty of the master and assumption of risk by the servant are the same in case of employment to make repairs as in any other employment.

**Same—Evidence as to Servant's Knowledge of Risk.—**Evidence considered, and *held* sufficient to justify a finding that plaintiff did not know, and might not, though using reasonable diligence, be able to ascertain, the dangers to which the bad condition of the track exposed him.

Appeal by defendant from an order of the district court for Waseca county, *Buckham,* J., presiding, refusing a new trial.

*B. S. Lewis,* for appellant.

*Lovely & Morgan,* for respondent.

GILFILLAN, C. J.[1] Action for personal injuries sustained by plaintiff by the running off from defendant's track of a box car, on which he was in its service as a brakeman. That the track was bad defendant does not deny. Indeed, it appears to have endeavored at the trial to show the track in worse condition than as shown by the evidence on the part of the plaintiff; its theory as presented here, and apparently as presented in the court below, being that the condition of the track was so bad that the plaintiff must have known the dangers to which he was exposed by continuing in the employment. That the injury was caused by the unsafe condition of the track was shown clearly enough. It is not claimed that defendant ever gave plaintiff actual notice of its unsafe condition; nor is it claimed that it had used proper care to have the track safe, except that, having allowed it to fall into bad condition, the defendant was then engaged in extensively repairing and putting the track in safe condition by resurfacing the bed and taking up the old ties and rails, and replacing them with new ties and new steel rails. A gravel train on which plaintiff served as brakeman was loaded with gravel at a gravel-pit about four miles south of Waseca, and was drawn south to a point near New Richland about 17 miles from the gravel-pit, and there the gravel was unloaded by the side of the track wherever needed for the purpose of resurfacing, and then the train would return to the pit to be reloaded. When the train would return to the pit at night, the gravel cars were left there, and the locomotive, with a box car on which plaintiff served as brakeman, brought the workmen into Waseca for the night. It was while thus coming from the pit to Waseca for the night that the casualty occurred.

We will not attempt to set forth the language of the court below in its instructions to the jury. The propositions touching the rights and duties of the parties contained in it are, in substance, these: *First*, the plaintiff, by continuing in the employment, assumed the reasonable, ordinary risks of the occupation upon which he entered, —that of brakeman upon a gravel train repairing the road of the defendant,—and if his injuries resulted from such risks he cannot re-

---

[1] Dickinson, J., because of illness, took no part in this case.

cover; *second,* that it was the duty of the defendant to furnish plaintiff in his employment a reasonably safe and suitable road over which to travel; *third,* but that if he knew or had competent opportunity to learn the defects and imperfections in the track, and the negligence on the part of the defendant, and still continued in the employment, he cannot recover.

On the first and third of these propositions no point is made; but upon the portions of the charge containing the second, the defendant (having saved the objection by its first, second, and sixth exceptions to the general charge, and its exception to plaintiff's first request) makes the principal question in the case. The objection made to it is that the rule which it states is not applicable. That it is the duty of a master to use reasonable care and skill to furnish his servants safe and suitable instruments and means to perform the service in which they are employed, is not denied by the defendant. But it is claimed that it does not apply to the safety or condition of a thing which the servant is employed to repair. It is argued in effect that where servants are employed to put a thing in safe condition and good repair, it would be inconsistent and absurd to require of the master to have it in safe condition and good repair for the purpose of such employment; and where the servant has nothing to do with the thing but to repair it the argument is undeniable. Such, however, is not exactly this case. The defendant was making extensive repairs to its track, necessarily doing the repairs or renewals a part at a time; or, rather, so far as plaintiff was concerned, it was preparing for such repairs by having the necessary material hauled and distributed along its track where it might be needed; and for this purpose it furnished, as one of the means to perform the service required of plaintiff, the old track, so far as it had not been taken up. Was it the duty of the defendant to plaintiff to have the old track it so used in a reasonably safe and suitable condition to perform this service?

The duty of a master in respect to the instruments and means furnished his servant to perform his service is the same, whatever the nature of the service may be,—whether it be to repair or to do any other thing. For instance, where repairing is to be done by means of engines and machinery, the duty of the master applies to such en-

v.32—20

gines and machinery; or if the servant is required to remove damaged cars to the place and for the purpose of repairs, while he assumes the risk that necessarily arises from the damaged condition of the cars, it is the duty of the master to use the proper care and skill in respect to the track over which the cars are to be moved, and to the other instruments, means, and appliances for moving them; and it extends also to the establishing and promulgating of suitable and needful regulations for the safe and proper conduct of the business, having reference to its risks and exigencies. *Fraker* v. *St. Paul, M. & M. Ry. Co., ante,* p. 54.

There is no difference as to the duty of the master and the assumption of risk by the servant between an employment to make repairs and any other employment. In all cases the servant is held to take on himself the risks necessarily incident to the employment, unless, perhaps, they be latent and known to the master, but not known to, nor by the use of proper diligence discoverable by, the servant; and in no case does he take on himself risks that arise by reason of neglects on the part of the master, unless they be known to him, or by the use of proper diligence are discoverable by him. If the danger in making repairs is increased by the damaged condition of the thing to be repaired, he ordinarily assumes the risk of such enhanced danger; but if it be increased by the neglect of the master to use proper care to employ competent and careful fellow-servants, or to furnish safe and suitable means and instruments to perform the service, or to establish and promulgate suitable and needful regulations for the safe and proper conduct of the business, he does not ordinarily assume such risks. In this case the danger might be designated as a risk incident, not so much to the work of repairing the track, as to the manner of doing it, or of the regulations for the conduct of the business. For it seems that defendant, using the old track for the purpose, chose to distribute the necessary material, the gravel, ties, and rails, on a long line of the road, before doing the actual work of repairing; that is, of putting the new material into the track. That this was a more convenient and less expensive mode of doing the work than by delivering the material only so fast as actually put into the repairs, commencing at one point and proceeding simultaneously with

the delivery of the material and the actual renewal of the track, and using the new track for the purpose of delivering the material, is probably true.    But it does not appear that it was necessary, nor that the work could not have been done in the way we have indicated.

The case, however, was not submitted to the jury on the theory that there might be danger to the employes, arising from the regulations for doing the work, but on the theory that, doing the work in that way, it was the duty of the defendant to have the track which it required its servants to use in a reasonably safe and suitable condition for such use.    In that, we think, the court below was right.    The fact that the work in which plaintiff was employed was that of repairing or making preparations to repair the track did not diminish its duty to furnish safe and suitable means and instruments to do his work.    As it required him in that work to use the old track, it should have had it reasonably safe for the purpose.

This brings the case to the question of plaintiff's knowledge, or opportunity to know, of the defects in the track which rendered it specially dangerous for him to continue in the employment.    He knew that the track was rough; that the defendant had begun to repair it, to relay it with steel rails; that new ties had been distributed along it; and that his train was hauling gravel for the purpose of repairs. From these facts defendant insists that plaintiff had reasonable opportunity to know the defect in the track, so as to be charged with assuming the risk by continuing in the employment.    On the other hand, however, there is some evidence that, while attending to his duties as such, a brakeman might not become aware of the rottenness of the ties, and the insecure manner in which the rails were fastened to them, (which the evidence points to as the defects causing the accident.)    Plaintiff denied knowing of the defects; and it appears, also, that besides the gravel train and extra trains, three passenger and four freight trains per day passed each way over the track, which plaintiff insists was a constant assurance on the part of the defendant that the track was in a reasonably safe condition for the use of the gravel train.    On the whole, this was a question for the jury.

The proposition in defendant's second request was given to the jury in the general charge.

We see nothing in the other exceptions to the charge or requests. The exceptions are mainly verbal criticisms, not well founded when the charge is taken as a whole.

The questions to the witnesses Ryan and White related to the appearance of the ties and fastenings, and whether their condition was, from such appearance, open to observation, and were proper for the purpose of showing to what extent the track was out of repair, and that such condition was easily discoverable. The questions to Jerome Madden, Jr., Jerome Madden, Sr., and Mrs. Madden, excepted to, all related to plaintiff's appearance, actions, and symptoms after the injury, as indicating a difference in his mental and physical condition. They called for and elicited only facts, and not opinions.

The objection made here to the questions to Dr. Cummings was not specifically pointed out in the objection made below, and therefore will not be considered here.

Order affirmed.