OF THE

### STATE OF IOWA

AT

### DES MOINES, SEPTEMBER TERM, 1909.

AND IN THE SIXTY-THIRD YEAR OF THE STATE.

---

OLE JACOBSON, Appellee, v. UNITED STATES GYPSUM COMPANY, Appellant.

**Master and servant:** NEGLIGENCE OF MASTER: EVIDENCE. In this action for injuries to a servant while assisting in the removal of a fire box from defendant's mills, the evidence is held to justify a finding of negligence on the part of defendant, in ordering plaintiff to go upon the fire box after its supports had been removed.

**Same:** CONTRIBUTORY NEGLIGENCE. A servant is ordinarily justified in assuming that the master has performed his duty and will expose him to no hidden peril of which he has not been warned. The question of plaintiff's contributory negligence in the instant case was for the jury.

**Same:** SAFE PLACE TO WORK: ASSUMPTION OF RISK: INSTRUCTIONS. The general rule that the master is required to furnish his servant a

safe place to work, is subject to the limitation that where the nature of the work in which the servant is engaged renders the place unsafe, he assumes the risk arising therefrom: but he does not assume the risk of enhanced dangers arising, while thus engaged, from any negligent act or omission of the master. In the instant case plaintiff's employment at the time of his injury made this phase of the law embodied in the limitation an important matter for instruction to the jury.

*Appeal from Webster District Court.*—HON. C. G. LEE, Judge.

SATURDAY, APRIL 10, 1909.

REHEARING DENIED WEDNESDAY, SEPTEMBER 29, 1909.

ACTION at law to recover damages for personal injury. Verdict and judgment for plaintiff, and defendant appeals. —*Reversed.*

*B. J. Price* and *Clark & Byers,* for appellant.

*W. T. Chantland* and *Kelleher & O'Connor,* for appellee.

WEAVER, J.—The defendant is a corporation engaged in the operation of gypsum mills at Ft. Dodge, Iowa, and up to a short time before the accident complained of plaintiff had been engaged as a laborer in some part of the process by which the rock is converted into the commercial product. It appears that for a few days prior to the accident he had been out of work in his usual line, and on the day before his injury had been employed by the defendant's foreman to assist in taking the machinery out of one of its mills. On the first day he assisted in loading an engine which was to be moved, and was then requested to return on the following day to help in taking down what the witnesses call a "smoke box" or "bridge."

This box appears to have been of rectangular shape, some three and one-half feet in width and depth, and extending horizontally along the side of the wall of the building twenty or more feet above a series of kettles or boilers. It was made of sheet or boiler iron and served as a conduit or pipe, connecting with upright smokestacks and affording a draft or escape for the smoke from the fires under the kettles.   To keep it in position brackets were placed under it to bear the weight, and to these brackets it was also fastened by rivets, some of which were inserted along the back side of the box and others nearer the front. If we correctly understand the description given, the box, when not stayed in place by any rivets, rested somewhat insecurely on the brackets and was liable to fall with any person stepping out upon it; but, if a few rivets were left in place, it could be mounted with reasonable safety.   Preparatory to moving the box, it was necessary to cut the rivets to which we have referred.   Prior to the morning in question plaintiff had never been in this mill and knew nothing of its construction, except as the same was open to casual observation.   To facilitate the cutting of the rivets, a swinging scaffold was arranged, and the foreman, Wurtsmith, went up to the box to do or supervise the work. For a time while Wurtsmith was attending to the cutting of the rivets along the front or bottom of the box, plaintiff sat upon its edge steadying the scaffold.   He was then directed to hitch a rope around the box and through a pulley attached to an overhead beam to be used in lowering the box, when the rivets were fully severed.   In performing this duty plaintiff stood upon the box and in so doing noticed no indication that it was liable to fall.   He was then sent below, where he remained, according to his statement, some fifteen or twenty minutes, when the foreman came down.   Before coming down the foreman had severed all of the rivets which attached the box to the brackets, but, according to plain-

tiff's story, did not so inform him. Not being satisfied with the location of the hitch or loop which plaintiff had put around the box, the foreman told him to go up and move it a matter of two or three feet. Responding to this direction, plaintiff climbed back to the smoke box and stepped out upon it to adjust the hitch which was pulled taut by the man at the rope below; but, as they slacked the line to allow him to move it, the box fell, precipitating him to the floor below, causing the injury complained of. According to his testimony, when he was ordered to readjust the rope around the box, plaintiff did not know and did not suppose the rivets had all been cut, and assumed that Wurtsmith had left enough uncut to enable him to venture upon the box with safety, that there was no other practicable way to execute the order given him except by taking that position, and that the foreman, knowing that the supporting rivets had all been severed, rendering the top of the box a place of danger, sent the plaintiff there without warning him of the peril. The negligence charged against the defendant in the petition herein is:

Failure to provide plaintiff a safe place to work; failure to warn him of the danger created by the removal of the rivets; failure to instruct him as to the danger into which he was being sent when defendant knew him to be inexperienced in said work and to be without knowledge of the insecurity of the place; and failure to exercise reasonable care in removing all of the rivets holding the box to the brackets. The defendant denies all negligence on its part. It claims and offers evidence to show that plaintiff not only knew the rivets had been removed and the danger of venturing upon the box, but was expressly warned of the peril to be encountered in doing so, and was advised to exercise caution to avoid the very accident from which he suffered. Defendant further alleges that, if there was negligence on part of any one with reference to

the falling of the smoke box and the injury to plaintiff, it was the negligence of plaintiff himself or of a co-employee, for which no recovery can be had.

At the request of the defendant, five special findings were submitted to the jury, on which answers were returned as follows:

(1) Did the plaintiff, prior to going upon the smoke box to readjust the rope, know that all rivets which joined that section to the remainder of the box had been removed? Ans. No. (2) Should the plaintiff by the exercise of ordinary care have known, prior to his going upon the smoke box to readjust the rope, that all the rivets which joined that section to the remainder of the box had been removed? Ans. No. (3) Did the plaintiff go upon the smoke box to readjust the rope upon his own motion? Ans. No. (4) Was the plaintiff warned by Wurtsmith of the danger of going upon the smoke box and pulling it out of its alignment? Ans. No. (5) Was the danger of going upon the smoke box in question, at and prior to the time the plaintiff stepped thereon to readjust the rope and hook, equally as apparent to the plaintiff, Jacobson, as it was to the foreman, Wurtsmith? Ans. No.

Defendant's motion to direct a verdict in its favor on the ground that plaintiff had failed to make a case on which to go to the jury was overruled, as was also its motion for a new trial because of various alleged errors of the court in its rulings and instructions. The material questions raised are as follows:

I. The sufficiency of the evidence to support a verdict in plaintiff's favor is challenged. While the case is not free from doubt upon the facts, we can not say that it involves no question for the jury. The issue rests substantially upon the testimony of the plaintiff, on the one side, and that of defendant's foreman, Wurtsmith, on the other. The corroboration on either side, so far as it bears upon the alleged acts of negligence, is neither strong, posi-

1. MASTER AND SERVANT: negligence of master: evidence.

tive, nor particularly convincing. If the jury believed the plaintiff that when he left the smoke box to look after the rope and tackle the rivets holding said fixture in place or part of them were uncut, that they were cut during his absence and without his knowledge, thus rendering the box unsafe to bear a person's weight thereon, and the foreman, knowing plaintiff's ignorance of the peril, or having reasonable ground to believe him ignorant thereof, sent him to perform a task which required him to trust himself upon said box without warning him of the risk which he would thus encounter, and plaintiff, acting as a reasonably prudent man under the circumstances, obeyed the order and was injured by the falling of the box, it was sufficient to justify a finding of negligence on part of the defendant.

Whether plaintiff was free from contributory negligence was also a jury question. According to his showing, up to the time he was sent to prepare the rope he had been at work standing or sitting upon the box 2. SAME: contributory negligence. and found it apparently safe for the purpose. He was then absent for fifteen or twenty minutes during which the foreman had cut, or procured to be cut, the rest of the rivets by which the box was held in position, thus introducing a new element of danger, of which plaintiff, as he says, had no knowledge, and of which he received no warning. If, under such circumstances, he received an order from the foreman to go back to the position on the box, we can not say as a matter of law that obedience to such order was not within the bounds of reasonable prudence on his part. An employee acting under the immediate orders and directions of his master or foreman must act promptly. If he is an efficient workman, he can not stop to examine minutely for the discovery of possible dangers which are not open to the observation of one who keeps such outlook as is reasonably consistent with the prompt discharge of the duty he is

ordered to perform. He is ordinarily justified in assuming that the master has performed his duty and will expose him to no hidden peril of which he has not been warned. *Offutt v. Exposition,* 175 Ill. 472 (51 N. E. 651); *Jones v. Herrick,* 141 Iowa, 615; *Newbury v. Getchel,* 100 Iowa, 441; *Graver Tank Works v. O'Donnell,* 191 Ill. 236 (60 N. E. 831); *Railroad Co. v. Egeland,* 163 U. S. 93 (16 Sup. Ct. 975, 41 L. Ed. 82); *Harrison v. Railroad Co.,* 7 Utah, 523 (27 Pac. 728); *Hawley v. Railroad Co.,* 82 N. Y. 370; 1 Labatt's Master & Servant, section 440. Applying the rule here cited, the Indiana court has said that a prudent man "has, the right within reasonable limits to rely upon the ability and skill of the agent in whose charge the common master has placed him and is not bound at his peril to set his own judgment above that of his superior." *Indiana Car Co. v. Parker,* 100 Ind. 181. Paraphrasing the same proposition, Mr. Labatt, *supra,* says: "When a servant did not assert his judgment in opposition to the supposed better judgment or stronger will of his master, the law usually allows a jury to determine whether he was negligent, or acted in reliance upon the judgment of his master, or out of a constrained acquiescence in the rule of obedience which his relation as servant imposed." We are satisfied that, upon the proposition of defendant's negligence and plaintiff's freedom from contributory negligence, the case was one for the jury.

3. SAME: safe place to work: assumption of risk: instructions.    II. As to the measure of care which the law imposes upon the master for the safety of his servant, the court charged the jury as follows:

You are told that it was the duty of the defendant, in the first place, to use ordinary care to furnish the plaintiff a reasonably safe place to work in which he might safely perform the service required of him by the exercise of ordinary care. If the defendant failed in this

respect, it was guilty of negligence. It is a part of the duty of the master, in furnishing a safe place for the servant to work, to use ordinary care to warn and apprise the servant of any new or unexpected or unseen danger which may be known to the master, and which is either unknown to the servant, or which, in the exercise of ordinary prudence, can not be ascertained by him. And you are told that if the master sends the servant into a place of danger, which danger is not known or apparent, open, and obvious to the servant, then the servant has a right to rely and believe that the master is sending him into a safe place, and he would not be required in the exercise of ordinary care to go out of his way to search for hidden danger, or to inquire of the master as to its safety. Whether the defendant failed to furnish the plaintiff a safe place in which to work, as above stated, is a question to be determined by you in the light of all the facts and circumstances surrounding the parties at the time of the alleged accident, as disclosed by the evidence.

While this instruction is conceded to state the general measure of the master's duty to furnish his servant a safe place to work, the point is made that it fails to direct the jury's attention to the limitation in that rule which the law recognizes when applied to work of this particular character. After considerable reflection we are of the opinion that the contention is well founded. Where the servant is engaged in work the very nature of which is to make the place unsafe, he assumes the hazard arising therefrom. For instance, if he undertakes to tear down or demolish a tottering wall, or to wreck a dilapidated building, and by undermining its foundation or removing its supports he increases the liability of the structure to collapse and fall upon him, he assumes the risk. Such dangers are a natural, if not necessary, incident of the service which he has undertaken to perform, and the master is not required to guard him against them. Mr. Labatt, in his work on Master and Servant, speaking of the master's obligation to furnish reasonably safe instrumentalities, including place

to work, for the use of his servant, says: "It is well settled that where the instrumentality which caused the injury was incomplete at the time of the accident, and the injured servant was engaged in the work of bringing it to completion, the question of whether the master was in the exercise of due care is determined with reference to a lower standard than that which is applied in the case of instrumentalities which have been put in a finished condition and are in regular use in the normal course of the business. A similar qualification of the master's liability is admitted where the injured servant was hired for the express purpose of assisting in the repair, demolition, or alteration of some instrumentality and the unsafe conditions from which the injury resulted arose from or were incidental to the work thus undertaken by him." 1 Labatt's Master & Servant, section 29. This qualification of the general rule is well established. *Martin v. Electric Light Co.,* 131 Iowa, 724; *Clark v. Liston,* 54 Ill. App. 578; *Edison Co. v. Davis,* 93 Ill. App. 284; *Smith v. Sellars,* 40 La. Ann. 527 (4 South. 333); *Aldridge v. Furnace Co.,* 78 Mo. 559; *Swanson v. Railroad Co.,* 68 Minn. 184. This limitation of the rule making the master liable for the reasonable safety of the servant's place of work has its root in that other general rule by which the servant is held to assume the risk of dangers naturally incident to the work he engages to perform, and, so long as assumption of risk remains an acknowledged principle of the law of negligence, that limitation will remain a logical necessity. This is not to say that the master is absolved from all duty to care for the servant's safety in this or any other employment. While not bound to guard the servant against perils naturally resulting from the very work being performed, he is bound not to enhance those perils by any negligent act or omission of his own. If he is present in person or by representative assuming charge and direction of the work and of the conduct of his employees, and by his own neg-

ligent act or direction creates a new or increased danger which otherwise would not have attended the servant's employment, the servant does not assume the risk of injury from such source. *McGuire v. Mill Co.,* 137 Iowa, 447; *Martin v. Edison Co.,* 131 Iowa, 724; *Finn v. Cassidy,* 165 N. Y. 584 (59 N. E. 311, 53 L. R. A. 877); *Madden v. Railroad Co.,* 32 Minn. 303 (20 N. W. 317); *Norfolk R. R. Co. v. Ward,* 90 Va. 687 (19 S. E. 849, 24 L. R. A. 717, 44 Am. St. Rep. 945); *Railroad Co. v. Naylon,* 17 Colo. 501 (30 Pac. 249, 31 Am. St. Rep. 335); *Sullivan v. Railroad Co.,* 107 Mo. 66 (17 S. W. 748, 28 Am. St. Rep. 388); *Bradley v. Railroad Co.,* 138 Mo. 293 (39 S. W. 763); *Const. Co. v. Howell,* 189 Ill. 123 (59 N. E. 535).

Plaintiff's employment at the time of his injury was such as to make this phase of the law not only a proper but a material matter for instruction to the jury, and the court's omission so to do we are disposed to hold reversible error.

Other questions discussed by counsel are not such as are likely to arise on retrial, and we shall not extend the opinion for their discussion. It is sufficient to say that we find no other serious error in the record.

For the reasons stated, a new trial must be ordered, and the judgment appealed from is therefore *reversed.*