FORSETH, Respondent, vs. IRON RIVER LUMBER COMPANY, imp., Appellant.

*February 3—February 22, 1910.*

*Master and servant: Personal injury: Unsafe working place: Unlighted timber chute: Assumption of risk: Contributory negligence: Evidence: Photographs: Excessive damages.*

1. Evidence showing that a timberman working at night on a rollway at the foot of a chute in a sawmill could avoid being struck by timbers coming down the chute only by stepping quickly to one side; that in the absence of a light over the chute he could see freshly sawed, light-colored timbers in time to avoid them, but could not see dark-colored ones; that during his employment only light-colored timbers had come down the chute, and he had a right to expect that none others would come; and that he was struck and injured by a dark boom stick which, although keeping a lookout, he could not see in time to avoid it— warranted a finding by the jury to the effect that the employer's omission to maintain a light over the chute rendered the place dangerous and constituted actionable negligence.

2. Under the circumstances stated, the risk of being injured by a dark boom stick coming down the chute could not be said to be an open and obvious one which the timberman assumed as incident to his duties; nor was he guilty of contributory negligence as a matter of law.

Forseth v. Iron River Lumber Co. 142 Wis. 87.

3. Testimony of a witness in such case that boom sticks had not come through the mill that season, and that they were "pretty hard to see," was relevant and was properly admitted.

4. Photographs which were shown to give a correct view and representation of the place where plaintiff was working at the time of the accident were properly admitted in evidence.

5. An award of $3,150 for injuries consisting in the breaking of both bones of the leg above the ankle and resulting in a permanent deformity and impairment of the use of the foot, is *held* not excessive.

APPEAL from a judgment of the circuit court for Douglas county: A. J. VINJE, Circuit Judge. *Affirmed.*

This is an action to recover damages for injuries received by the plaintiff while he was employed by the defendant and which are alleged to have been due to the negligence of the defendant. The action was originally against the Edward Hines Lumber Company and the *Iron River Lumber Company,* but was dismissed as to the Edward Hines Lumber Company. The *Iron River Lumber Company* is engaged in a general sawmill business at Iron River, Wisconsin. On the north side of their sawmill is a conveyor for carrying to the sawmill yard the long and heavy timbers which have been sawed at the mill. After being sawed the timbers are pushed onto a horizontal rollway, about sixty feet long and two feet wide, made of heavy timbers. On the bottom of it are rollers, parallel and alternately live and dead; the live rollers being connected with and operated by the machinery of the mill. At the end of this rollway is a sharp decline or chute about twenty feet long, built of heavy, smooth, and slippery timbers. The rollway and the chute have sides about two feet high for holding and guiding upon the rollway and chute the timber which is run out upon the rollway and down the chute. Extending from the lower end of the chute, about twelve feet below the level of the rollway mentioned above, is a rollway about 275 feet long. Along the central portion of this rollway is a series of dead rollers, flanked by a low guard rail and extending about thirty feet from the

foot of the chute.   Along both sides of the rollway, outside
of the guard rails, are footwalks.   Outside of each of the
footwalks is a skidway onto which are rolled the timbers
which come down the chute and onto the rollway.   The roll-
way between the guard rails is also planked and is used as a
floor for walking.   When a timber had been carried out onto
the upper rollway by the live rollers, until more than half
of it projected over the chute, it dropped down the chute with
great force and speed and was carried out onto the rollers on
the lower rollway, sometimes going seventy-five feet or more
from the foot of the chute along the rollway.   After the tim-
ber slid onto the lower rollway, men with cant-hooks pushed
it along the rollway to the desired position and then rolled
it off onto the skidways.   Ordinarily, two men, called tim-
bermen, were employed in moving the timber along the roll-
way.   One walked on each of the footwalks outside of the
guard rails and they thus moved the timber along the roll-
way without stepping inside the guard rails.   When a tim-
berman worked alone, however, it was customary and neces-
sary for him to stand between the guard rails.   Having
caught the back end of the timber with his cant-hook, he
pushed it along the rollway to the desired position for rolling
it off onto the skidways.

On April 8, 1908, the plaintiff was employed by the de-
fendant to work as a timberman on the rollway.   For four
days he worked during the daytime.   For three days of this
time he and another timberman worked together, but on the
fourth day he worked alone.   After plaintiff had worked
for four days on the day shift he was put on the night shift
and worked alone as timberman for three nights and part of
the fourth.   When such timberman worked on the rollway
alone it was necessary for him to watch the timbers as they
were projected along the upper rollway and out over the
chute to protect himself from injury by the timbers as they
came down over the foot of the chute onto the lower rollway,
because of the force and speed with which the timbers fell

down the chute and ran out onto the rollway. When he ob-
served a timber projecting over the chute he stepped onto one
of the footwalks outside of the guard rails and waited until
the timber had come down. During the daylight the timber-
man could readily see the timber as it was projected over the
chute, but during the nighttime it was necessary to have ar-
tificial light in order to perform his service.

The defendant had an electric lamp of sixteen candle
power eight feet above the upper end of the chute, a light
above the lower rollway twenty-three and one-half feet from
the lower end of the chute, and others along the rollway at
distances of forty feet. The plaintiff testified to the effect
that he did not know that a light or lamp had theretofore
been provided over the end of the chute; that it was not
lighted during the nights he was there at work; that the
fourth night of his work was a dark night, and that the near-
est light to the end of the chute was the one twenty-three and
one-half feet from the lower end of it, and that he was able
to see the white, newly-cut timber as it was projected over
the chute and thus protect himself and avoid injury by get-
ting out of the way. After the plaintiff had been working
for three or four hours on the fourth night, an old boom-
stick, a dark, discolored log, which had been run through the
mill but not sawed, was projected out along the upper roll-
way and came down the chute. Plaintiff was pushing a
timber along the rollway and, although he was watching for
timber at the upper end of the chute, he testified that he did
not see the boomstick until it had come partly down the chute
and was so close to him that he was unable to avoid being
struck by it. Both bones of his right leg were broken just
above the ankle; he has suffered great pain, and is perma-
nently injured, in that his leg is weak and his foot is per-
manently turned out, partially impairing the use of his foot
and leg.

The jury in a special verdict found that there was not suf-
ficient light in and about the place where the plaintiff was

working to enable him to see the boomstick coming down the chute; that the defendant was negligent in not furnishing more light, and that this was the proximate cause of the plaintiff's injuries; that the plaintiff was not guilty of any want of ordinary care contributing to his injuries; and that he had not assumed the risk and danger incident to the boomstick coming down the chute and injuring him. The damages were fixed at $3,150. This is an appeal from the judgment on the verdict as rendered.

*Solon L. Perrin,* for the appellant.

*Victor Linley,* for the respondent.

SIEBECKER, J. It is contended that there is no evidence to sustain the finding of the jury to the effect that the plaintiff's working place was not a reasonably safe one for want of sufficient light to enable him to see the dark timber coming down the chute. The jury found that this place was not sufficiently lighted to enable plaintiff to see the boomstick as it passed from the upper rollway down the chute and onto the lower rollway, and that the defendant was negligent in omitting to keep a lamp at the place over the chute to furnish the requisite light at this place. The contention is that the evidence fails to sustain the findings of facts embraced in the answers of the jury to the questions of the special verdict. It appears from the foregoing summary of the facts established by the evidence that the plaintiff in performing his service near the lower end of the chute was required to observe the sawed timber coming down the chute to avoid being struck as the timber slid out onto the lower rollway over the place he necessarily occupied in performing his duties. Under the circumstances shown it is manifest that the light provided on the occasion in question was sufficient for observing the freshly sawed, light-colored timbers. The evidence, however, tends to show that because of the dim light plaintiff could not see the dark boomstick as it entered and started down the chute. It also appears that he did not know, nor

was he informed, that such dark timbers were liable to·come through the mill. The evidence is that no such dark timbers had come through the mill while he was working there as timberman. In the situation presented to him he was justified in believing and in relying on the fact that none but freshly sawed, light-colored timbers would come down the ·chute. Under such circumstances the jury were well justified in finding that the omission of the defendant to keep a lighted lamp in the place provided therefor over the chute made it well-nigh impossible for the timberman to observe the dark timber as it was projected over the chute. It is also shown that the timberman working on the rollway avoided the danger of injury from timbers coming down the chute by watching for them and quickly stepping to the side of the main line of rollers. It was therefore sufficiently shown that the dark timber made plaintiff's working place danger-·ous through defendant's omission to light the chute; that the plaintiff had no knowledge of the extra hazard from this boomstick; that he had not been apprised thereof; and that such conduct on defendant's part was the proximate cause of plaintiff's injuries. These facts and circumstances warranted the inference that the omission to keep a lighted lamp ·over the chute constituted actionable negligence.

It is claimed that the evidence shows that the plaintiff was fully informed of the way defendant conducted its business; that the peril and danger complained of were open and obvious; that the plaintiff must be held to have assumed them in undertaking the employment; and further, that his failure to observe the boomstick before it struck him amounts to ·contributory negligence as matter of law. We do not find that these claims can be sustained in the light of the evidence. The evidence fails to show that a timberman, looking ·out for freshly sawed timbers in the usual course of his duty, could see this dark-colored one, or that he could be apprised of its approach in any other way, before, as plaintiff testified, it was so close upon him that it was impossible for him to

Forseth v. Iron River Lumber Co. 142 Wis. 87.

escape injury from it. As stated, the facts in evidence tend to show that because he was unable to see it he was not aware of its approach, although he had kept a lookout. He also had a right to expect that nothing would come through the mill except the freshly sawed, light-colored timber. Under such circumstances it cannot be said that this danger was an open and obvious one which plaintiff assumed as incident to his duties. These facts also justified the inference that the defendant was free from contributory negligence.

It is contended that the damages are excessive. The injury consisted of a breaking of the bones above the ankle and a tearing of the ankle cords, which resulted in a permanent weakness of the joint and an abnormal turning out of the foot, permanently impairing the use of the foot in walking and leaving the plaintiff deformed. Under these circumstances we cannot say that the jury's award of damages is so excessive that we can disturb it.

We find no prejudice in the admission of the evidence of the witness Odegard. His statements concerning the fact that boomsticks had not come through the mill that season and that they were "pretty hard to see" were relevant to the issues litigated and were properly admitted.

There is evidence that the photographs give a correct view and representation of the place and structures where plaintiff was working at the time of the accident. They were therefore properly received.

There is no prejudicial error in the record.

*By the Court.*—Judgment affirmed.