Horace A. Bruns v. Northern Iowa Brick & Tile Company, Appellant.

**Master and servant:** ASSUMPTION OF RISK: PLEADINGS. The answer to an action by a servant for personal injury that the servant assumed the risk incident to the employment does not raise the issue of assumption of risk arising from the master's negligence.

**Same:** PLEADINGS: APPEAL. The striking of an amended answer after the case was submitted properly pleading assumption of risk was not prejudicial, where the cause was tried on the theory that assumption of risk was an issue, as the appellate court will consider the case as tried and submitted to the jury.

**Same:** ASSUMPTION OF RISK: EVIDENCE. While the servant assumes the risks necessarily incident to the work in which he is engaged, still the master can not escape liability on the ground that the servant has assumed the risk unless he has exercised reasonable care for the servant's safety, or his negligence in that respect was or should have been known to the servant. The evidence in this case fails to show assumption of risk incident to the fall of overhanging earth.

**Same:** ASSUMPTION OF RISK. Where a servant refused to work in a pit unless better lighted, but continued in the work relying upon the master's agreement to provide better light, the master undertook to and did carry the risk arising from failure to furnish sufficient light during the intervening time.

**Same:** NEGLIGENCE OF MASTER: PROXIMATE CAUSE. Where it is the duty of the master to properly light the place in which a servant is required to work and his failure to do so is the proximate cause of the servant's injury he is liable therefor.

**Same:** PROXIMATE CAUSE: EVIDENCE. The question of proximate cause is usually one of fact; and in this case the evidence is held to require a submission of the issue as to whether the master's failure to furnish sufficient light to enable the servant to discern the danger incident to the place was the cause of the injury.

**Same:** CONTRIBUTORY NEGLIGENCE: EVIDENCE. The question of whether plaintiff's injury by a fall of overhanging earth was the result of his own negligence is also held under the evidence to be a question of fact.

*Appeal from Cerro Gordo District Court.—*Hon. J. J. Clark, Judge.

WEDNESDAY, MAY 10, 1911.

SUIT to recover damages for personal injuries. Verdict and judgment for the plaintiff. The defendant appeals.—*Affirmed.*

*Blythe, Markley, Rule & Smith* and *Cliggett, Rule & Smith,* for appellant.

*Wade, Dutcher & Davis* and *T. G. McDermott,* for appellee.

SHERWIN, C. J.—At the time he was injured, the plaintiff was employed by the defendant as a night pit foreman. He was an experienced hand and had worked in the same capacity in the same pit for several months before he was hurt, though for one week immediately prior thereto he had acted as day pit foreman. The day pit force had left an overhanging chunk of clay in the west bank of the pit, and it was while attempting to remove said chunk that the plaintiff was injured. The petition alleged negligence on the part of the defendant in failing and neglecting to properly light the pit and bank where the plaintiff was injured. The evidence shows that the pit was about twenty-five feet deep; that but one arc electric light was used for lighting purposes; that this light hung on the east side of a pole that was about fifteen feet high and eighty-five feet from the bank where the plaintiff was at work. At the point in the bank where the plaintiff was injured, and about twelve feet from the bottom of the pit, there was a bench of clay three or four feet wide extending horizontally along the face of the bank. The lower part of the overhanging chunk of clay was a few feet above this bench and extended to the top of the pit bank. When the plaintiff was working under the overhanging clay preparing a blast to loosen it, it fell and caught him.

In its original answer, the defendant alleged, in addition to a general denial, that the plaintiff had assumed the risks incident to his employment. Under the rule of our cases, the pleading was not sufficient to put in issue the question of the plaintiff's assumption of risk arising from defendant's negligence. *Martin v. Light Co.*, 131 Iowa, 734.

1. MASTER AND SERVANT: assumption of risk: pleadings.

Some three weeks after the verdict, but while a motion to set it aside was pending, the defendant filed an amendment to its answer curing the defect in its former pleading, and this amendment was stricken from the files

on the plaintiff's motion.   The case seems to have been
tried on the theory that the question of the
plaintiff's assumption of risk of defendant's
negligence was in issue, and in our judgment the amend-
ment did no more than conform the pleadings to the theory
upon which the trial had proceeded and the proof and might
have been allowed to stand.   But, however this may be, the
ruling is not prejudicial to the defendant because we shall
treat the case as it was tried and presented to the jury by
the instructions.

2. SAME: plead-
ings: appeal.

While other questions are argued with much force,
the serious questions presented by the record are two:
First, did the plaintiff assume the risk of working without
more light? and, second, was the failure to furnish more
light the proximate cause of his injury?   The appellant
says that the risk was assumed for the reason that plaintiff,
when injured, was engaged in the work of making a place
safe that he knew to be dangerous, and the rule that where
an employee is engaged in making a dangerous place safe,
or when the place becomes unsafe by reason of the work
that he is doing, the master is not liable, is relied upon by
the appellant.

While it is the general rule that the servant assumes
the risks necessarily incident to the progress of the work
in which he is engaged, it is also the rule that the master
must exercise reasonable care for the serv-
ant's safety, no matter what the nature of
his employment.   In *Martin v. Light Co.,*
131 Iowa, 724, it was said: "It would be a most unrea-
sonable rule if the act of a servant in undertaking an un-
usually dangerous service for the master should relieve such
master from all obligations to exercise reasonable care for
the servant's safety.   The servant may properly be held to
the risk of the extraordinary danger which is naturally in-
cident to the extraordinary service; but he never takes
the risk of the master's negligence under any circumstances,

3. SAME:
assumption
of risk:
evidence.

same when he knows of such negligence, or as a reasonably intelligent person ought to have known of it, and chooses to remain in the service." In other words, the master can not escape liability on the ground that the servant has assumed the risk unless it appears that the master has exercised reasonable care for the servant's safety, or that such failure on his part was or should have been known to the servant. *McQueeny v. Chicago, M. & St. P. Ry. Co.,* 120 Iowa, 522; *Madden v. Railroad Co.,* 32 Minn. 303 (20 N. W. 317).

The evidence fails to show that the place was unsafe' when the plaintiff went to work that night, in the sense that the overhanging clay was so loosened that it was liable to fall at any moment. The plaintiff undoubtedly understood that, if left there, the overhanging clay might become loosened, and thus become a menace to the workmen below it; but he did not know that it was then in a dangerous condition. On the contrary, he examined its condition at the top where cracks would appear, if it was loosened from the main bank, and discovered no indication of danger. He also examined the sides and the under part thereof, and was unable to find any indications that it was otherwise than solid and firmly attached to the bank. While he had earlier in the evening, shot some holes fifteen feet to one side of the chunk, the evidence tends to show that such explosions would not ordinarily affect the stability of this chunk or the ground within ten or twelve feet of it. So far, then, as the record shows, there was no apparent danger in working where the plaintiff was when hurt. The bank was clay which was not readily loosened or dislodged. The evidence further shows that the fall of such an overhanging piece of clay is usually preceded by the dropping of small pieces from the under side thereof in sufficient time to enable a workman to escape from possible danger. In this respect, the case is different from one where sand is involved, because sand usually rolls down

without any warning. It appears also that, if there had been sufficient light, the plaintiff could have seen the preliminary signs of a fall to which we have already referred. If more light was necessary to make the place reasonably safe, the defendant was negligent in not furnishing it.

The plaintiff knew of the general danger of working in the pit with insufficient light and refused to continue as night pit foreman unless better light was provided. 4. Same: assumption of risk. The defendant then agreed to better the light for the next night's work, and the plaintiff went to work relying upon such agreement. The defendant by making such an agreement, undertook to and did carry the risk arising from its failure or neglect to furnish sufficient light for the proper and safe conduct of the work during the intervening time. *Jacobson v. Gypsum Co.*, 144 Iowa, 1; *McGuire v. Mill Co.*, 137 Iowa, 417; *Martin v. Light Co., supra.*

If the plaintiff had known that the clay was loose and likely to fall while he was at work under it, the defendant's promise to furnish better light the next day would not avail him anything for the reason that, so far as that particular piece of work was concerned, additional light the next night could be of no benefit to him. The danger would be over before the improved light was to be furnished; but, as we have already said, the plaintiff had no such knowledge, but, on the contrary, after as careful an examination as he could make with the light furnished, he discovered no indications that the bank was about to fall and was satisfied that there was no immediate danger. The appellant also contends that the conditions were constantly changing during the progress of the work, and that the doctrine of safe place to work does not, therefore, apply. As the work progressed, the condition of the clay bank was undoubtedly changing, and for that reason it was the duty of the defendant to change its lights to meet such changed conditions; but the conditions in the bank were

not changing so rapidly as to make it impracticable to install sufficient light. The ground of negligence alleged is the failure in this respect. If the place was unsafe when the plaintiff went to work, it had been left so by the day force, and the danger might have been discovered had there been sufficient light. If the chunk of clay was not then cracked or loosened, but became so after the plaintiff began work below it, a proper light would also have disclosed that fact and given an opportunity to avoid the danger. There were no conditions requiring a constant changing or moving of the light, nor any conditions that would interfere with furnishing sufficient light for the safety of the night workmen.

While the master can not generally be held responsible for the dangers arising during the progress of the work, where it is his duty and within his power to furnish a 5. Same: negligence of master: proximate cause. sufficiently lighted place, and he fails to do so, and such failure is the proximate cause of an injury, we think he is liable. In reaching this conclusion, we have not overlooked the case of *Strepanski v. Plaster Co.,* 162 Mich. 696 (127 N. W. 706), or the other cases relied upon by appellant. If the *Strepanski* case can not be distinguished from this because of the light conditions there existing, we must decline to follow it, because we think it contrary to our own decisions. See cases *supra,* and *Devaney v. Construction Co.,* 178 N. Y. 620 (70 N. E. 1098); *Carlson v. Railway Co.,* 106 Minn. 254 (118 N. W. 832); *Buehner v. Package Co.,* 124 Iowa, 445; *Streicher v. Brick & Tile Co.,* 124 N. W. (Iowa), 327.

If conditions existed at the time plaintiff went to work about the overhanging clay which created the danger, or 6. Same: proximate cause: evidence. if they afterwards arose, and such conditions and danger would ordinarily be discovered with reasonably sufficient light, the failure to furnish such light might be the proximate cause of

the injury. Whether or not a given state of facts is the proximate cause of an injury is usually a fact question to be determined by the jury, and we think the rule applies here. The appellant contends, however, that no facts were proven tending to show a dangerous condition of the chunk of clay, or any condition at any time that a better light would alone have disclosed. We have already referred to some of the evidence which we think negatives the appellant's contention, and a careful reading of the entire evidence has convinced us that it is sufficient to sustain the finding that the want of light was the proximate cause of the plaintiff's injury.

The question of the plaintiff's contributory negligence was clearly for the jury.

The appellant's most serious complaint of the instructions given is disposed of by what we have already said. In another instruction, the court told the jury that it was the defendant's duty to exercise ordinary care to provide the plaintiff a safe place to work. The rule is that the master must provide a reasonably safe place to work; but we think the instructions as a whole and, indeed, the particular instruction complained of, stated the rule with sufficient clearness for the jury to understand it. Criticism is also made of the third and sixth paragraphs of the instructions; but we find no error therein for which there should be a reversal.

7. SAME: contributory negligence: evidence.

We think the case was fairly tried, and that the judgment should be *affirmed*.