EDWARD J. BEARD, Appellant, v. J. C. HUBINGER BROS. Co.

**Master and servant:** ASSUMPTION OF RISK. Where an employee is engaged in installing new machinery, and the conditions of necessity change as the work progresses, the master is not charged with the duty of providing a safe place to work; but the employee assumes the dangers incident to the changing conditions, and the master 's under no obligation to warn him of the dangers arising therefrom.

**Same:** SAFE PLACE TO WORK: LIGHT. Where an employer furnishes sufficient artificial light to properly light the place where a servant is at work, and which may be turned on by the servant at his pleasure, the employer is not liable for negligence in failing to furnish a safe place to work because insufficiently lighted.

*Appeal from Lee District Court.*—HON. W. S. HAMILTON, Judge.

TUESDAY, MAY 13, 1913.

ACTION for damages resulted in a directed verdict for defendant, on which judgment was entered. The plaintiff appeals.—*Affirmed.*

*Hollingsworth & Blood,* for appellant.

*D. F. Miller,* for appellee.

LADD, J.—The defendant is engaged in manufacturing starch, and for that purpose, several buildings are required. Among these is what is known as the refinery. On the fourth floor of this building was a washing machine, the cylinder of which was defective or out of repair. To remove it, block and tackle were rigged with one block on the ceiling and the other on the cylinder. This cylinder weighed from three hundred to five hundred pounds. On June 13, 1910, plaintiff, with two others, lifted it four or five feet high by pulling the rope when the foreman, Lafevre, ordered them to sway toward the river. Plaintiff was on that side, and, as the others pulled over toward him, his hand was brought in contact with a neck or arm extending from the cylinder about eighteen inches and seriously injured. The petition alleged that such injury was in consequence of defendant's neglect: (1) In not properly lighting the building; (2) in not properly guarding the machine; and (3) in failing to warn plaintiff of the danger when the order was given. The court, in directing a verdict for the defendant, necessarily found none of these sustained by the evidence. As the machine was being moved in order to replace it with another, it could not well be guarded, and the second ground is without support.

The evidence bearing on the other grounds may be stated. An electric light had hung over the washer, but a cord had been added to that to which it had hung, and the glass bulb was lying on the floor twenty or thirty feet away on the other

side near the new cylinder. The cylinder, being lifted, was in the north part of the room, about thirty or forty feet from the east side and farther from the west side. It was about twenty-five feet from the north end. There was a starch press at the east side and another to the north, and some clothes were hanging between the washer and the windows on the west side. To the west of the refinery was an elevator somewhat higher which kept some light out, and near by was the steep house, the shade of which fell across the fourth floor of the refinery late in the afternoon.

Musser, one of the men at the rope, testified that the windows about the room were fourteen feet apart on three sides of the building, and that the "glass in the windows was of heavy glass and not clear, was of fireproof glass, and the light was not very good to work by." The plaintiff testified that: "On the north side the large windows are a kind of fireproof glass, a big glass with wires through them. They were not made to give much light, I don't suppose. The other side had 10x16 lights. There were seven windows on the river (east) side and the glass was pretty dirty. The dirt is made by very fine dust sifting through from above. It is charred bone dust used in making glucose. . . . The windows on that particular day were dirty." He also testified that the room was not well lighted, except next to the windows. Garrison, the other man at the rope, also testified that "the room where the work was being done was not very well lighted"; that it was "dimly lighted" there. According to this witness, there were plenty of electric lights to have furnished sufficient light had these been turned on. The plaintiff had worked on the pulley and shaft, but never on the washer. When sent for by Lafevre, the foreman, he was at work in the steep house, and when he and Garrison, who came with him, reached the machine, it had been taken apart and the block and tackle was ready, save hooking above to the rafter.

Plaintiff testified that he knew nothing of this projection or arm by which connection was made with the shaft,

and that his attention had not been directed to it, and that he was not cautioned to avoid contact therewith. He was entirely familiar with the premises, and on cross-examination testified: "I had been working about that plant about six years and had been in all the rooms and had been in this room frequently, and I had never worked on this frame. I supposed they got the power to operate it from the shaft above, and the shaft is liable to be attached at the other end of the washer. It has to be attached to something, and I am supposed to know that. But I was not supposed to know but what they could take that arm off when all the other things were taken off. The machine was not running when I was there, and the attachments were all taken off and the arm was left. I did not know that the arm had to be there when they operated the machine, and as a millwright I did not know that it was necessary for the arm to be there. They could set up a hanger on the floor. There had to be a connection somewhere, but I did not know that arm was there." He was one of a half dozen carpenters and millwrights employed about the establishment and was called upon as the others were "when there was any machinery to be fixed up or set up just the same as these other employees."

I. Such is the record on which appellant contends the issues should have been submitted to the jury. It will be observed that to repair and change machinery was a part of

1. MASTER AND SERVANT: assumption of risk.

plaintiff's duty, and, in assisting to remove the old cylinder and replace it with the new one, he was acting within the scope of his employment. In the course of such work of repairing and changing machinery, conditions necessarily change as the work progresses, and the dangers thereof are incident to the employment which the employee assumes in undertaking work of this character. To hold otherwise would require the master not only to furnish proper appliances but to see that these were used by the servant with due caution for his own safety. Plaintiff was experienced in the work of repairing and making

changes in machinery, and though he may not have known of the arm extending from the cylinder, he was not advised that it did not, and the very nature of his employment put him on inquiry as to precisely what was being moved and the transitory danger involved in doing so. This being so, there was no duty on the part of the master to warn, and the omission so to do by the foreman did not render the defendant liable. 4 Thompson, Neg. section 4068. *McQueeny v. Railway,* 120 Iowa, 522.

II. The light in the room was somewhat dim, but there was no evidence tending to show that it was not sufficient for the purposes for which the room was used. None of the persons engaged in changing the cylinders in the washer habitually worked therein. They did so only when their services were required in the way of repairing or changing the machinery or the like. Were more lights essential for what they did, these were provided by a sufficient supply of electric lights which might have been turned on if necessary to safety in removing the one cylinder and replacing it with another. Moreover, none of the witnesses testified that this neck or arm to the cylinder could not have been seen had they looked, and one of them (Musser) said it was plainly visible. A place in which to work may be unsafe because not properly lighted (*Bruns v. North Iowa Brick & Tile Co.,* 152 Iowa, 61) ; but it does not necessarily follow that when, owing to the extent and surroundings of the premises, adequate light is not afforded from the windows, this is supplemented by a system of electric lights, and those employed may, by merely turning a button, obtain sufficient light, the master can be said to have failed to exercise ordinary care in this respect in furnishing a safe place to work. These men were employed first at one place and then at another, and if, because of what they did, more light was necessary, this might have been readily obtained had either the foreman or one of those assisting him turned on the electric lights or part of them. The danger, if any, proceeding without these

2. SAME: safe place to work: light.

was as apparent to them as it could have been to the defendant, and, proceeding with conditions as they were, they assumed the temporary risk, and there can be no recovery on this ground. *Buehner v. Package Co.,* 124 Iowa, 445; *Bruns v. Tile Co., supra.* The court rightly directed the jury to return a verdict for the defendant.—*Affirmed.*