## MARTIN HANSON v. GREAT NORTHERN RAILWAY COMPANY.[1]

December 31, 1914.

Nos. 18,968—(161).

**Negligence — evidence.**

    Evidence considered and *held* to conclusively show no negligence on the part of defendant.

Action in the district court for Polk county to recover $25,500 for personal injuries received while in the employ of defendant. The case was tried before Watts, J., who denied defendant's motion for a directed verdict in its favor, and a jury which returned a verdict for $7,000. From an order denying defendant's motion for judgment notwithstanding the verdict or for a new trial, it appealed. Reversed and judgment ordered for defendant.

*M. L. Countryman, A. L. Janes* and *James Montague,* for appellant.

*W. E. Rowe* and *F. A. Grady,* for respondent.

1 Reported in 150 N. W. 380.

BUNN, J.

This is an action to recover for personal injuries. Plaintiff had a verdict, and defendant appealed from an order denying its motion for judgment notwithstanding or for a new trial.

It is a matter of some difficulty to state the facts so they will be clearly understood. Plaintiff had worked for defendant as a bridge builder for five years prior to his injury. December 5, 1912, he, with three other men, was directed to chip away rock at the head of the lower bridge chords on the east parapet of defendant's bridge crossing the Red Lake river at Crookston. The lower chords of the bridge are of steel and rest on stone abutments. In order to take care of the expansion and contraction of the chords it is necessary from time to time to chip away the surface of the stone parapet in front of the chord. This is the work that plaintiff and the other men were directed to do and were doing at the time of the accident. The place in which plaintiff was required to do this work was a triangular or "V" shaped area on the easterly side of the south end of the bridge structure. Along the easterly side of this area the stone abutment continued in the form of a perpendicular wall to a height of six feet and a half, with an overlapping coping at the top. On the westerly side is the chord of the bridge resting on a device known as a roller casting which rests on an iron plate on the stone floor of the abutment. This roller casting extended into the open space five inches, and was 30 inches long and five inches in height above the floor. The triangular area was approximately two feet in width at the north end, and tapered back to a few inches at the south end; it was four feet in length. The stone floor of the space was 13 feet above the frozen river below. In chipping the stone back of the end of the chord or girder, plaintiff used a hammer and chisel, standing with his left foot on the stone floor and his right on the roller casting. There were four bolts through this roller casting, and the nuts protruded an inch and a quarter above it. These nuts were nine inches apart. Plaintiff's right foot was placed between two of them. It was about two feet from where plaintiff stood in doing his work to the outer edge of the floor of the space. During the day before the accident happened and during a portion of the

fatal day, plaintiff had worked with a "partner," who held the chisel while plaintiff handled the sledge. By afternoon of the day the accident happened the work had progressed so far towards the apex of the triangle that but one man could work at a time, and by standing as we have stated plaintiff did. It was necessary to stoop forward and stand in a rather cramped position in order to reach the stone that was to be chipped. After working for some time in this position, plaintiff straightened up to rest his muscles. In some manner, not very clearly explained by plaintiff, his right foot slipped or caught against one of the nuts on the roller casting; he lost his balance and fell to the ice below. The injuries received were so serious that it is not urged that the verdict of $7,000 is more than fair compensation, if defendant is liable at all for the accident.

The only negligence charged is that defendant failed to furnish plaintiff a safe place to work. The claim in this regard, and the only claim, is that defendant should have constructed and placed in the "V" shaped space a wooden platform, covering its entire area, including the roller casting. Carpenters testified that this could have been done. Such a platform would have covered the casting and the projecting nuts of the bolts, and would have been five inches above the stone floor. It would have made the space somewhat wider at the apex and probably would have given somewhat more room for men to stand in doing the work of chipping stone. But we are wholly unable to see that a finding of negligence is justified because such a platform was not built into the space. In no respect would it make the place any safer, unless it be because the platform would cover the roller casting and the nuts that protruded above it. How these nuts were a source of danger to men working in the space we are unable to see. On the contrary it would seem that they were an effective prevention against the slipping of the workman's foot, which is apparently the chief if not the only danger to be feared. A wooden platform, when covered with snow and ice, does not suggest itself as particularly safe, or a better guard against a workman's slipping and losing his balance than was the rough stone floor on which to rest the left foot and the nuts on the roller casting against which the right foot could rest. The place was dangerous in no

different way than is any place so high above solid earth that a false step or loss of balance may mean death or serious injury. It was plainly much less dangerous than many places where men are working every day. The master's duty as to furnishing a safe place is only to use reasonable care, and what is reasonable care depends much upon the particular circumstances. To hold that defendant was guilty of a breach of duty to its servants, because it did not floor over this triangular place in which men were occasionally required to stand while working, would be carrying the safe-place doctrine too far. We would next be asked to say that a contractor for the construction of a modern skyscraper must build platforms for the men who are fitting steel joints and girders high above the ground, or that a window washing concern must furnish its men scaffolding to use when doing their work. The danger in this case was inherent in the nature of the work, and we are not able to perceive how defendant could have removed or lessened this danger by any precaution it could take. The accident was a most unfortunate one, but it seems to have been a pure accident and not due to any fault of defendant. This being the conclusion, it is unnecessary to consider the question of assumption of risk. As it fairly appears that no case of negligence was made by the evidence, and that from the nature of the facts, no case of liability can be made if there is another trial, it is best to end the litigation here.

Order reversed and judgment for defendant ordered.

On January 15, 1915, the following opinion was filed:

Per Curiam.

The application for a reargument of this case is denied. At the request of plaintiff's counsel, the opinion is amended by adding at the end thereof before the words "Order reversed," the following paragraph:

"The bridge was used by trains carrying interstate commerce. We decide that the facts proven do not make out a case of negligence in failing to furnish a reasonably safe place within the meaning of the Federal Employer's Liability Act."