FRANK DOLMAGE v. CHICAGO, ROCK ISLAND & PACIFIC RAILROAD COMPANY.[1, 2]

March 5, 1954.

No. 36,105.

[1]Reported in 63 N. W. (2d) 273.
[2]Certiorari denied, 348 U. S. 822, 75 S. Ct. 34, 99 L. ed. ——.

340

*Sullivan, Stringer, Donnelly & Sharood,* for appellant.
*Donald A. Chapman,* for respondent.

CHRISTIANSON, JUSTICE.

Action is brought by plaintiff, Frank Dolmage, to recover damages under the Federal Employers' Liability Act for personal injuries resulting from a fall in defendant's yards at Iowa City, Iowa. The trial court ruled that the Federal Employers' Liability Act was applicable, and the jury returned a verdict for plaintiff. The jury found specially in answer to a written interrogatory that 50 percent of the total negligence was attributable to defendant and 50 percent was attributable to plaintiff. The trial court denied defendant's motion for judgment notwithstanding the verdict and judgment was entered on the verdict. Defendant appeals from the judgment.

At about 9 p. m. on the evening of October 1, 1951, in defendant's Iowa City yard, plaintiff was walking diagonally across the tracks in a southeasterly direction toward a bunk car where he intended to spend the night when he fell and broke his leg on the south rail of the eastbound main track. At the time of the accident, plaintiff was employed by defendant as a laborer on a floating section crew which was working out of Iowa City during the hours of 7 a. m. to 4 p. m. A bunk car containing cooking and sleeping facilities was furnished by defendant for members of floating section crews who were away from home and who desired to use it. Plaintiff's foreman had given plaintiff a key to the bunk car in the Iowa City yard and was aware that plaintiff intended to use it on the night of the accident.

Although not quite correct geographically, it is sufficiently accurate for our purposes to state that the defendant's Iowa City yard runs east and west. Both the tool house and the passenger depot are located on the north side of the tracks; the depot is more than 800 feet west of the tool house. To the west of the tool house, there are only two tracks—the eastbound main and the westbound main tracks. To the east of the tool house, there are eight tracks for more than a thousand feet. As usual there were cars on each of the four tracks to the south of the main tracks on the night of the accident. The bunk car in question was located near the eastern end of the southermost or outer track called the hold track and was more than 1,000 feet from the tool house close to an outside toilet and an electrical outlet designed to be connected to a cord from the bunk car. There are well-defined footpaths on each side of the tracks beginning at the depot and terminating beyond the bunk car on the south side and at the tool house on the north side. Defendant did not provide any artificial light in the yard except in the immediate area of the depot which was well lighted. Although the city had street lights at the end of several of the abutting streets on the south side of the tracks, nevertheless, it was very dark in the yard on the night of the accident.

Taking the facts most favorable to the verdict, as we must, the following facts appear: Plaintiff had used this bunk car before and was aware of the general details of the physical layout of the yard. This was a day yard and the only activity at night was the picking up or dropping out of cars by trains passing through Iowa City. Plaintiff had crossed the tracks in going from the tool house to the bunk car during both day and night, but he had never crossed the tracks at night without the aid of his flashlight which he furnished himself. There was no pathway across the tracks in this particular area and the presence of cars on the tracks necessitated an irregular route which passed between and around cars. On the day of the accident, plaintiff discovered after going off duty at 4 p. m. that he had forgotten his flashlight at home, but he neither purchased another one nor notified defendant that he lacked a flashlight. At about 9 p. m. he left the passenger depot and followed the footpath on

the north side of the tracks to the tool house. Then, as he started across the tracks toward the bunk car, he was in complete darkness; he could not see more than two feet in front of him and could not see where he was placing his feet. He had crossed the westbound main track and the north rail of the eastbound main track when he fell and broke his leg on the south rail of the eastbound main track. Although he had no knowledge of what caused him to stumble and fall, he assumed that it was the rail or a tie. No train movement was involved, and no defect in the track or roadbed was shown or established. The ordinary route from the passenger station to the place where the bunk car was located is the pathway along the south side of the tracks. It crosses over one spur track at a point near a street light at the end of an abutting street.

■ The Federal Employers' Liability Act is contained in 35 Stat. 65, 45 USCA, § 51, *et seq.* Section 51 provides in part as follows:

"Every common carrier by railroad * * * shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce, * * * for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment."

It is fundamental that the interpretation of this act is a matter of federal law and that federal decisions are controlling. As the United States Supreme Court said recently in Urie v. Thompson, 337 U. S. 163, 174, 69 S. Ct. 1018, 1027, 93 L. ed. 1282, 1295:

"* * * What constitutes negligence for the statute's purposes is a federal question, not varying in accordance with the differing conceptions of negligence applicable under state and local laws for other purposes. Federal decisional law formulating and applying the concept governs."

■ Defendant's first contention is that the Federal Employers' Liability Act is not applicable to the instant case. It argues that

plaintiff was not on duty at the time that he was injured and that, therefore, he was not "employed by such carrier" at the time of the injury. Two of the circuit courts of appeal have been confronted with this issue in cases which in our opinion are indistinguishable from the instant case. In well-reasoned opinions by distinguished jurists, the majority of each court reached opposite results based on their varying interpretation of this requirement of the act. Compare Atchison, T. & S. F. R. Co. v. Wottle (10 Cir.) 193 F. (2d) 628, with Mostyn v. Delaware, L. & W. R. Co. (2 Cir.) 160 F. (2d) 15. Fortunately, for purposes of this decision, we need not resolve this issue. We shall assume, without deciding, that the Federal Employers' Liability Act is applicable to the instant case.

Defendant's second contention is that the evidence is insufficient to support the jury's finding that it was negligent. The trial court in its charge to the jury assumed that defendant was under a duty to illuminate the particular trackage area in question and instructed the jury insofar as here material as follows:

"* * * there is no evidence in this case of any negligence on the part of the defendant railroad company based upon the condition of the rails, the ties, or ground, or surface, or equipment in the yards at or near the area in the vicinity of which this accident occurred. The question before this Jury, and the only one to be considered in connection with the question of negligence, is whether or not adequate lighting was furnished under the existing circumstances, and next, if it was not, was the failure or omission to furnish adequate lighting the cause of the accident which occurred and the injury which followed. When I said cause, I meant was it the proximate cause of the accident and the injury which followed.

"The duty of the defendant respecting the condition of its yards is limited to reasonable and ordinary care in the maintenance thereof. Did the requirement of ordinary care so far as the defendant railroad company is concerned, under all the existing circumstances, require additional lighting and illumination in the area in question, or were adequate lighting facilities furnished?"

Although the general question before us is whether the evidence is sufficient to support the jury's finding that defendant was negligent in failing to provide adequate lighting under the existing circumstances, the initial question for determination is whether defendant was under a duty to light the trackage area between the tool house and the bunk car which was the route plaintiff was taking at the time he was injured. It is undisputed that defendant did not provide any artificial illumination in the yard except in the immediate area of the depot. However, defendant maintains that it was not under any duty to do so and that, in any event, the street lights at the end of the abutting streets provided adequate lighting.

Defendant had a duty to provide a reasonably safe means of ingress to and egress from the bunk car. See, 56 C. J. S., Master and Servant, § 180c; 35 Am. Jur., Master and Servant, §§ 169, 173. Defendant did not undertake to light a route to the bunk car and plaintiff, recognizing this, customarily carried a flashlight. Except for the contention that the pathway along the south side of the tracks should also have been lighted, no claim is made that it was not a reasonably safe means of ingress to and egress from the bunk car. Plaintiff admitted at the trial that there was no occasion because of any track or yard movements to floodlight or otherwise illuminate the yard and that a railroad employee working at night ordinarily carries a flashlight or lantern. He also conceded that a flashlight was reasonably adequate to light the route that he had selected to the bunk car. No showing was made that any employee other than plaintiff had ever used this route to the bunk car at night. Furthermore, there is nothing in the record to indicate how frequently the bunk car was used by employees when at this location. Thus the controlling question presented for decision is whether under these circumstances a jury should be permitted to find that defendant was negligent in failing to light a route to the bunk car in anticipation of the possibility that an occupant of the bunk car would be without his flashlight.

Surely a railroad need not provide a scheme of fixed lighting for routes which are used by its employees infrequently and which can be adequately lighted by flashlight when the occasion arises. Nor

does a railroad have to furnish flashlights to all its employees, even though they may have need for them, if it is clear to the individual employees that they are expected to furnish their own flashlights except when actually engaged in the performance of work at night. Plaintiff was aware that he was to furnish his own flashlight and did so. Whether the flashlight is furnished by the railroad or the employee, it may be mislaid, lost, or forgotten, or it may fail mechanically while in use. However, where a railroad has no notice thereof and does not have a reasonable opportunity to replace its flashlight or temporarily furnish one to employees who usually furnish their own, to sustain a jury's finding that a railroad was negligent in failing to provide adequate lighting under circumstances such as presented here, where a flashlight would be otherwise adequate, would make our previous conclusions meaningless and, for all practical purposes, would make a railroad an insurer of its employee's safety while in its yard at night. It would impose upon railroads the intolerable burden of lighting every foot of trackage where an employee might possibly cross during the hours of darkness in anticipation of the possibility that the employee's flashlight might fail mechanically or be mislaid. We find nothing in the Federal Employers' Liability Act to indicate such a legislative intent. Accordingly, we hold that the evidence fails to establish that defendant was under any duty to light the trackage area in question and that it is insufficient to support the jury's finding that defendant was negligent in failing to provide adequate lighting under the circumstances of this case.

Mindful that this is a federal question we have examined the federal decisions, but we have found none that would indicate a result contrary to that we have reached. The case of Crawford v. D. M. & I. R. Ry. Co. 220 Minn. 225, 19 N. W. (2d) 384, relied upon by respondent, is clearly distinguishable on its facts from the instant case.

For the foregoing reasons, we are of the opinion that the trial court erred in denying defendant's motion for judgment notwith-

standing the verdict and that the judgment appealed from should be reversed with directions to enter judgment for defendant.

Judgment reversed.

DELL, CHIEF JUSTICE (dissenting).

It is my opinion that the Federal Employers' Liability Act is applicable to and governs this case. It seems to me that whether the defendant was negligent in failing to provide some type of lighting facilities so as to afford a reasonable means of ingress to and egress from the bunk car was for the jury under the facts of the case. For that reason I respectfully dissent.

MR. JUSTICE NELSON took no part in the consideration or decision of this case.