In re Matter of the Admission to Probate of the Last Will and Testament of Sarah Overpeck, Deceased.

**Wills:** EXPERT EVIDENCE: CONCLUSION. The expert testimony of the physician of a testatrix, that at the time she executed the will she was in condition to comprehend the value of her property and her obligations to those nearly related to her, was not objectionable as his conclusion on the issue to be determined by the jury, thus putting himself in the place of the jury.

**Instructions:** EXCEPTIONS: REVIEW. Instructions which are not excepted to save by motion for new trial, which is filed too late to preserve the exceptions, will not be reviewed.

**Wills:** MENTAL CAPACITY: EVIDENCE. Where the evidence of the mental capacity of the testatrix, consisting of the testimony of the attending physician on one side, and that of neighbors and friends, who, on the other hand, saw her only occasionally, was in substantial conflict, the court was justified in leaving the issue to the jury.

**Same:** UNDUE INFLUENCE: MENTAL CAPACITY. Mere opportunity, interest or mental weakness will not justify a submission of

the issue of undue influence in the execution of will, but where there is evidence of *senile dementia* it may be inferred from circumstances which otherwise would not justify the inference; and the unreasonableness of the disposition of property may be taken into consideration in determining soundness of mind, but in the absence of the connection of the beneficiary in any way with the making of such a will, submission of the issue of undue influence is not justified from that fact.

**Same:** SUBMISSION OF ISSUES: HARMLESS ERROR. Where the questions of mental capacity and undue influence in the execution of a will are submitted to the jury, it cannot be said on appeal that error in submitting the issue of undue influence was harmless, in the absence of a special finding of want of mental capacity; since it cannot be determined on which issue the verdict for contestants was based.

*Appeal from Hardin District Court.*—Hon. R. M. Wright, Judge.

FRIDAY, MAY 7, 1909.

REHEARING DENIED, THURSDAY, OCTOBER 28, 1909.

THIS is a contest as to the admission to probate of an alleged will. The objections made to the probating of the instrument were that it was executed at a time when the testator was of unsound mind by reason of senile dementia, and that it was the result of undue influence exerted upon her by one Geo. Wolf, the principal beneficiary named therein. There was a verdict for contestants, and the court entered judgment in accordance with such verdict, taxing the costs to said Wolf as proponent, and he appeals.—*Reversed.*

*J. H. Scales,* for appellant.

*J. H. Roberts* and *Albrook & Lundy,* for contestants.

McCLAIN, J.—I. Many objections are urged to rul-

ings in regard to the admission or rejection of evidence, but an examination of the record satisfies us that they are without even plausible foundation, save the one directed to the action of the court in permitting a physician, testifying as an expert, to say that testatrix was not, at the time the will was executed, "in the condition to comprehend the value of her property and her estate, and the obligations she was under to those next to her or nearly related to her." The ground of this objection is that the question calls for the conclusion of the expert on the very issue to be determined by the jury, and that in answering it he was putting himself in the place of the jury. This objection is not without support in some of the cases, but the whole subject was gone over in a recent case (*In re Estate of Glass,* 127 Iowa, 646); and, after considering the cases now relied upon for appellant, we held that the opinion of such a witness might be asked as to whether the testator was capable of transacting ordinary business, and of intelligently disposing of his property. We think the question asked of the witness in this case is not broader than the question held to have been proper in the *Glass* Case, and therefore reach the conclusion that the objection made was properly overruled.

*1. Wills: expert evidence: conclusion.*

II.   Some complaint is made of the instructions with reference to want of mental capacity and undue influence. Several of the instructions criticised were not excepted to, save in a motion for new trial, which was filed too late to preserve such exceptions. Considering, then, only the instructions to which exceptions were properly saved, we find no error therein with regard to the law applicable to the evidence. It would serve no useful purpose to set out these instructions in full, and the objections urged are so general that, without setting out the instructions, no profitable discussion of the objections could be entered upon. We are well satisfied after an examination of the entire record, that the

*2. Instructions: exceptions: review.*

questions of law arising in the case were properly stated to the jury for their guidance ,in determining the issues of fact.

III.    It is further contended, however, that there was not sufficient evidence to go to the jury on either the issue as to want of mental capacity, or that as to undue influence.

3. WILLS: mental capacity: evidence.

With reference to the evidence as to capacity of the testatrix at the time this will was executed, there was clearly such conflict as to justify the court in leaving it to the jury for decision. Testatrix was eighty-two years of age when the will was executed, and had for four years been in poor health, and under treatment by the physician whose testimony as an expert is principally relied upon by contestants. She had been suffering from heart disease, kidney trouble and indigestion.    An attending physician under such circumstances might well have observed indications of senile dementia in testatrix which had escaped the detection of her neighbors and friends, who saw her only occasionally, and were without special qualifications for judging as to the inroads which increasing age and physical infirmity had made upon her mind.    We express no opinion as to the weight which should have been given to the testimony of this expert, nor as to whether it was sufficient to overcome the testimony of many acquaintances who expressed the belief that, until after the will was executed, she was in the possession of her normal faculties.

IV.    But as to the evidence relating to undue influence we find ourselves irresistibly impelled to the conclusion that the court erred in submitting that question to the jury.    Testatrix owned a farm of one hundred and sixty acres, within a few miles of the town of Ackley.    This farm was rented to a tenant, and testatrix alternately lived on the farm with this tenant and in the town.    Wolf, the principal beneficiary of the will, was, when testatrix first knew him, a farm hand in the employ of the tenant, but

during the later years of testatrix he had come to be her attendant, and to be subject to call by her for errands and personal assistance of various kinds, and, when she removed for the last time to Ackley, where she died, he went with her.  There is no evidence that he was intrusted with any particular responsibility in regard to the conduct of her business.  In June, 1905, while she was living on the farm, she sent for one Eggert to draw her will, which it appears was duly executed, disposing of her farm to her tenant at $47 per acre, and providing that a considerable part of the money to be paid should be used for the support of a grandchild then living with her.  There were small bequests to other relatives, and to Wolf, who was made executor.  On the death of the grandchild the money was to be distributed among her relatives, none of whom, save the grandchild above referred to, lived in Iowa.  Wolf was also made the guardian of the grandchild.  In August or September testatrix procured this will from the bank where it was deposited, and destroyed it and caused another will to be drawn by Eggert (and this, as we understand it, was after the death of the grandchild), in which Wolf was given her furniture, small bequests were made to other grandchildren, and the balance of the property was left to Mrs. Roberts, a daughter residing in Philadelphia.  In March, 1906, after testatrix had removed to Ackley, Wolf, purporting to act under the direction of testatrix, procured the previous will from the custodian thereof, and notified J. H. Scales, an attorney of that place, who represents him as proponent on this appeal, that testatrix desired him to prepare another will for her.  Mr. Scales called upon her, and, as he testified, without Wolf being present he made memoranda of the wishes of testatrix, which he embodied in a typewritten will, drawn in duplicate and sent by his daughters, one of whom was his stenographer, to the testatrix for execution.  These daughters testified that in their presence, and without any one else being present, testatrix

carefully read the instrument, and then, calling through the door for Wolf, who was not far away, directed him to bring pen and ink, and to procure the attendance of a neighbor, who was to sign the will as a witness. Then, in the presence of the Misses Scales and of the witness thus called, and of Wolf, testatrix signed the instrument, which was witnessed by one of the Misses Scales and by the neighbor thus called. In this will testatrix devised and bequeathed to Wolf, described as her adopted son, all her property, both real and personal, subject to a bequest of $3,000 to her daughter in Philadelphia, and Wolf was made executor.

The circumstances relied upon to indicate undue influence on the part of Wolf are briefly those already related, as to his personal attendance upon testatrix, his procuring possession of her former will, the further disposition of which is not made to appear, his calling on Mr. Scales to attend testatrix for the purpose of preparing a new will, and certain remarks of his, made before the execution of the last will, to the effect that he was the guardian of the grandchild, and was going to get married and take the boy with him, as the boy liked him best of all, and that he was going to take the estate and use it. It also appears that Wolf criticised the conduct of the daughter of testatrix, Mrs. Roberts, in staying away from her mother and failing to take care of her, but it does not appear that these remarks were made to testatrix, or that she entertained any unfriendly feeling toward her daughter. Indeed, it is shown to the contrary that she excused her daughter for not coming to her on the ground that the daughter was suffering from illness. Sons of this daughter had recently visited testatrix, and there is no indication of any feeling on the part of testatrix that her daughter or these grandchildren had neglected her.

Evidence of opportunity was of course competent, but without more it would not justify the submission of the question of undue influence to the jury. *Gates v. Cole,* 137

Iowa, 613; *In re Estate of Townsend,* 128 Iowa, 621; *Hanrahan v. O'Toole,* 139 Iowa, 229. Where

4. **SAME: undue influence: mental capacity.**

there is evidence tending to show senile dementia, the jury might be justified in inferring undue influence from circumstances which would not otherwise justify such an inference, but the fact of exercising undue influence must not be left to mere inference from opportunity, interest, and mental weakness. Wolf was not an adopted son of testatrix, but he had been treated by her, at a time when she seems to have been still in reasonable possession of her faculties and judgment, as entitled to confidence. She had in her first will designated him as the guardian of the grandchild for whom she made liberal provision, and also as executor of her estate, although witnesses testify to declarations of hers, subsequently made, indicating that she had not intended him to be executor as well as guardian. After the death of the grandchild it may not have seemed to testatrix to be an unnatural disposition of her property to leave it to this man who had faithfully served her, though but a few years, rather than to relatives who had contributed nothing to her comfort, however blameless they may have been for not doing so. The unreasonableness of the disposition of her property, if it is to be regarded as unreasonable, could be taken into account in determining soundness of mind of the testatrix when she made her will; but, in the absence of anything connecting Wolf with the formation or execution of the design to make such a will, no court can say, nor leave it to the jury to say, that he unduly influenced such execution.

If there had been a special finding of want of mental capacity, we might say that the error in submitting the

5. **SAME: submission of issues; harmless error.**

issue as to undue influence was without prejudice. *In re Estate of Wharton,* 132 Iowa, 714; *In re Will of Selleck,* 125 Iowa, 678. But in the absence of such finding, we are unable to in-

fer that the verdict for contestants was based upon the evidence of want of mental capacity, which was properly submitted to the jury's determination, rather than upon the issue as to undue influence, of which there was no evidence to support a finding for contestants.

For the error in submitting the case to the jury on the issue as to undue influence, the judgment is *reversed*.

### SUPPLEMENTAL OPINION.

PER CURIAM.—In a petition for rehearing it is insisted for appellant that objection was made to the action of the trial court in sustaining a question asked of the attending physician as to decedent's capacity to make the will in question which went further than the question discussed in the first paragraph of the opinion in this case, and it is insisted that for the guidance of the court on a new trial the propriety of such question should have been discussed. The question thus referred to went to the border line, at least, of permissible questions of this kind, and the court prefers not to express now an opinion as to its propriety, in view of the fact that on a new trial the contestants may not care to insist on an answer to a question in that form, in view of our present doubt as to whether it should be permitted.

As to the other points submitted in the petition for rehearing, we are satisfied with the views expressed in the original opinion, and the rehearing is denied.