62 N.J. Super. 62 (1960)
162 A.2d 128
CHARLES HOHL, PLAINTIFF-APPELLANT,
v.
JOHN METTLER, JR., ET AL., DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued February 8, 1960.
Decided June 10, 1960.
*63 Before Judges GOLDMANN, CONFORD and FREUND.
Mr. Leonard Adler argued the cause for plaintiff-appellant (Mr. Edward Marshall, attorney).
Mr. Richard H. Thiele, Jr., argued the cause for defendants-respondents (Messrs. Wharton, Stewart and Davis and Mr. William T. Stewart, Jr., attorneys).
The opinion of the court was delivered by CONFORD, J.A.D.
Plaintiff sues in tort for damages against defendants for wrongfully preventing his obtaining *64 a license to operate a trailer court in the Township of Readington by false and malicious statements concerning the nature of his proposed operation in public advertisements and circulars, by word of mouth, and before the township committee. Defendants applied for summary judgment upon the basis of the complaint, the answer, and plaintiff's answers to interrogatories. There were no affidavits on either side. The trial court granted the motion on the ground that plaintiff's claim did not amount to a cause of action. In the course of colloquy on the argument of the motion, the judge also expressed doubt as to plaintiff's ability to establish proximate causal relationship between defendants' acts and the denial of the license.
From the allegations of the complaint, liberally read, as necessary on such a motion, Di Cristofaro v. Laurel Grove Memorial Park, 43 N.J. Super. 244, 249 (App. Div. 1957), and the answers to the interrogatories, we piece out the following factual contentions by plaintiff.
In the fall of 1952 plaintiff contracted to purchase certain lands on State Highway No. 28 in Readington conditional upon obtaining a municipal license to operate a trailer court thereon. He thereupon applied for and received such a license from the township committee October 9, 1952. Relying thereon, he consummated the purchase of the property. Thereafter, on November 7, 1952, the committee revoked the license because of failure of publication of notice of a hearing on the application (Hohl v. Township of Readington, A-792-58, App. Div., decided February 29, 1960, unreported). A new application, filed December 1, 1952, was set down for public hearing January 2, 1953. Thereupon defendants instigated and financed a campaign of advertising and publicity in opposition to plaintiff's proposed tourist park "representing the same in words and pictures to be offensive, dangerous to health, leading to increase of taxes, depreciating the value of real property," all asserted by plaintiff to be false. As a result the hearing was adjourned to February 2, 1953 and the license then denied, allegedly because of the *65 "atmosphere of prejudice and antipathy to the thought of a trailer camp" engendered by defendants' activities. This action was instituted November 7, 1958.
Among the specific allegations of false statements attributed to defendants in the answers to interrogatories are found these: (a) a newspaper advertisement consisting of a cartoon "depicting dirty, unkempt trailer court and containing statements that trailer courts depreciate value of real property, impair public health and are against the public welfare"; (b) another advertisement reading, inter alia, "Can our schools accommodate children from upwards of 200 families who pay a minimum in taxes, stay only a short time, and then move on?" The advertisement called upon the people to come to a township committee meeting November 3 [1952] "to stop this." (Plaintiff contends that his filed application for the license showed that only 40-50 families were to be accommodated); (c) statements to the newspapers to the effect that inadequate drainage conditions would create a health menace to surrounding residents and farms; and (d) statements at the township committee meeting of February 2, 1953 concerning drainage conditions and prospective number of school children from the camp. Plaintiff cites as evidence of malice a statement by two of the defendants that they would stop at nothing to defeat plaintiff's plans.
The complaint is in three counts, one predicated upon interference with plaintiff's contractual relationships, the second upon interference with his prospective business advantage, and the third upon the theory of injurious falsehood. Of these, there is utterly no factual support for the first. The other two causes of action mentioned are well recognized in our cases, the second involving the whole gamut of conduct injurious to legally protected interests (not based upon false statements as the gravamen), the third being specifically predicated upon false statements. Examples of these causes of action are found in Rainier's Dairies v. Raritan Valley Farms, Inc., 19 N.J. 552 (1955); *66 Mayflower Industries v. Thor Corp., 15 N.J. Super. 337 (Ch. 1951), affirmed opinion below 9 N.J. 605 (1952); Longo v. Reilly, 35 N.J. Super. 405 (App. Div. 1955), certification denied 25 N.J. 45 (1957); Di Cristofaro v. Laurel Grove Memorial Park, 43 N.J. Super. 244 (App. Div. 1957); Sustick v. Slatina, 48 N.J. Super. 134 (App. Div. 1957); Kurtz v. Oremland, 33 N.J. Super. 443 (Ch. Div. 1954), affirmed opinion below 16 N.J. 454 (1954); Joseph v. Passaic Hospital Ass'n, 38 N.J. Super. 284 (App. Div. 1955), certification denied 20 N.J. 535 (1956); cf. Trautwein v. Harbourt, 40 N.J. Super. 247 (App. Div. 1956), certification denied 22 N.J. 220 (1956); 20 A.L.R.2d 344 (1951).
In view of the precise basis for our conclusion that the judgment should be affirmed, hereinafter to be stated, we shall not expatiate upon the sufficiency of the facts here exposed to make out a colorable case for the wrongfulness of the defendants' conduct within the principles expounded in the cited cases. It will suffice to express the view that defendants' activity was at least conditionally privileged, having regard for their ownership of property in the immediate vicinity of the proposed trailer camp, as well as their status as citizens of the community interested in its general welfare. They would, therefore, be liable at most for abuse of the privilege; for example, if their statements were knowingly false or their conduct motivated by actual malice. Prosser, Torts (2d ed. 1955), § 108, pp. 767, 768. "The justification must be `as broad as the act, and must cover not only the motive and the purpose, or, in other words, the object sought, but also the means used.'" Louis Kamm, Inc. v. Flink, 113 N.J.L. 582, 589 (E. & A. 1934). As to the other features of defendants' complained-of activity, the publication of the cartoon referred to, and the stirring up generally of opposition to the proposal on grounds of civic interest, depreciation of realty values and general considerations of health, taxation, etc., we think it patent no legal cause of action is made out by the plaintiffs. The *67 acts complained of in that general category fall well within the qualified privilege of citizens to protect their property and serve the general common good. They would appear to come within the protection analogous to that secured by the defamation rule of "fair comment" as to matters of public interest or concern. See, e.g., Leers v. Green, 24 N.J. 239, 253 (1957); Licciardi v. Molnar, 23 N.J. Misc. 361, 368 (Dist. Ct. 1945); and see Charles Parker Company v. Silver City Crystal Co., 142 Conn. 605, 116 A.2d 440 (Sup. Ct. Err. 1955).
But whether or not a cause of action was otherwise issuably founded in the record, we conclude that the judgment of dismissal was correct for the reason that it was palpably shown that there was no genuine issue of fact concerning the non-existence of an essential factual link in plaintiff's asserted cause of action  a proximate causal relationship between so much of defendants' conduct as could conceivably be found to have been in excess of the privilege and the denial of the license by the township committee. A reasonably probable connection between the wrongful conduct and the injury complained of is an essential element of the cause of action. Prosser, op. cit., supra, § 108, p. 764; McCue v. Deppert, 21 N.J. Super. 591, 597 (App. Div. 1952); Di Cristofaro v. Laurel Grove Memorial Park, supra (43 N.J. Super., at page 253); Goldman v. Feinberg, 130 Conn. 671, 37 A.2d 355, 356 (Sup. Ct. Err. 1944); Campbell v. Rayburn, 129 Cal. App.2d 232, 276 P.2d 671, 672 (D. Ct. App. 1954); Cooper v. Steen, 318 S.W.2d 750, 757 (Tex. Ct. Civ. App. 1958); Debnam v. Simonson, 124 Md. 354, 92 Atl. 782, 784 (Ct. App. 1915); Annotation, 9 A.L.R.2d 228, 256-259 (1950). "[T]he plaintiff must prove in all cases that the publication has played a material and substantial part in" the injurious consequence complained of. Prosser, ubi cit., supra.
There are abundant indications in this record that bona fide opposition to trailer camps in general and this one in particular was widespread in the community at the time the *68 township committee was considering this application, and that its action was primarily, if not entirely, the natural result thereof. The answers to the interrogatories disclose that approximately 300 people appeared at one or more of the meetings of the township committee at which this application was discussed, most of them, by clear inference, in opposition to it; that plaintiff was advised by the township clerk November 18, 1952 "that representatives of a group of citizens in the immediate neighborhood where you desire to establish your trailer camp have already notified the Committee that they intend to file vigorous objections to the issuance of a license * * *. It is thus apparent that there will be very strenuous objections to the issuance of the license you seek"; that at the meeting of February 2, 1953 four real estate brokers testified that the establishment of a trailer camp would depreciate property values appreciably in its neighborhood (the then existing ordinance provided that no license would be granted if the committee found "unreasonable depreciation of surrounding properties will ensue [from grant of license]" or that the license would "be contrary to the interest of the public health, safety, morals and welfare"); that a representative of the township board of education stated at the same meeting that the trailer court would raise the population of the schools, creating a potential health danger because of limited toilet facilities in a new school under construction; and statements and testimony by a number of persons indicating inadequate drainage on the property because of excessive shale and other imperfect drainage qualities.
As we have indicated, a substantial portion of defendants' complained-of activities was free from legal vulnerability, and the range of the conduct theoretically actionable, under the principles discussed above, narrow. From the application on file before it the township committee knew that only 40 to 50 families would be located in the camp, not the 200 mentioned in defendants' publications. Presumably its health and engineering officers advised it concerning the *69 facts as to soil and health problems. When one considers these circumstances, the large number of protestants against the trailer camp other than defendants who appeared before the township committee, the considerable weight of the testimony from persons other than defendants that the project would be objectionable as a matter of property depreciation, adverse impact on schools, and problems of health and drainage, and the prohibitory language of the ordinance under which the governing body presumably acted, it becomes obvious that any attempt by a jury at apportionment of a substantial causative role in the final determination of the governing body to such of defendants' statements or advertisements as might be found to have been knowingly false or maliciously motivated (which alone would carry liability), as distinguished from the mass of other relevant data and the influence of general public opinion marshalled before it, would constitute an exercise in sheer conjecture and speculation. Cf. Genovay v. Fox, 29 N.J. 436, 438 (1959). Upon the development at a trial of the facts here manifested, or any others reasonably to be anticipated (plaintiff specified none below or in his appellate argument), and giving plaintiff the benefits of the broadest favorable legitimate inferences therefrom, the trial court would be bound to grant an involuntary dismissal for absence of any foundation in reasonable probability for an affirmative finding on proximate connection between the assumed wrong and the specific claimed injury. This consideration of itself amply warrants summary judgment for defendants. Plaintiff did not ask the trial court for further time to buttress his factual showing. Cf. Evans v. Rohrbach, 35 N.J. Super. 260, 268, 269 (App. Div. 1955), certification denied Evans v. Matthews, 19 N.J. 362 (1955). Nor did he take any steps for discovery during the nine-month pendency of the action before its dismissal.
Although the point as to lack of proximate cause was not pressed by defendants on the appeal, it was, as noted above, raised by the trial judge on the motion for judgment, and we afforded the parties an opportunity to brief it after the *70 argument herein. No satisfactory refutation has been forthcoming.
Judgment affirmed.