OPINION OF THE COURT
Jones, J.
When multiple theories of liability have been submitted to a jury which is instructed to return a general verdict only, a judgment entered on such a verdict in favor of the plaintiff must be reversed when the proof was insufficient for submission as to one or more of those theories. In this medical malpractice action, because plaintiffs failed to introduce evidence sufficient to sustain a verdict in their favor on two of the theories submitted, the order of the court below affirming plaintiffs’ judgment must be reversed and a new trial ordered with respect to the theories of liability for which the proof was sufficient.
On June 17, 1976 plaintiff Joan Davis underwent a bilateral subcutaneous mastectomy,[1] resulting in the removal of substantial portions of both breasts, accompanied by breast reconstruction with silicone implants. Although the patient’s prior medical history had given rise to suspicion that a cancerous condition might be present, pathological and X-ray studies of segments of the tissue removed dis *179 closed no malignancy. The present action by Mr. and Mrs. Davis was subsequently instituted to recover money damages, for what they term an unnecessary operation, from Dr. Elethea Caldwell, the physician by whom the surgery was performed, and from Strong Memorial Hospital, Dr. Caldwell’s employer and in whose facilities the operation was performed. At the conclusion of the trial at which medical witnesses were called by both sides the court charged the jury that plaintiffs were proceeding on five theories of liability[2] which he described as follows: (1) erroneous diagnosis of Mrs. Davis’ condition by Dr. Caldwell; (2) failure to have performed a biopsy[3] prior to the surgery; (3) performance of an unnecessary operation on Mrs. Davis; (4) failure to have followed accepted standards of medical care in the community; (5) failure, prior to the surgery, to have obtained an informed consent from Mrs. Davis. The jury was instructed that it was required to decide all five of plaintiffs’ claims but should return only one, general verdict; that if it found in favor of plaintiffs on any one of the claims the jury would award a dollar amount but that it would not make known on which of the claims it had found for the plaintiffs. Following extended deliberation the. jury returned a substantial verdict against both defendants, which was affirmed by a divided court at the Appellate Division. The case is now before us by reason of the dissent on a question of law in that court, the dissenting Justice being of the opinion that the judgment for plaintiffs could not stand because there was insufficient evidence to warrant submission to the jury of the first and third theories of liability articulated by the trial court.
We agree with the view thus expressed and accordingly reverse the order of the Appellate Division. Because it is impossible from the general verdict returned by the jury in accordance with the trial court’s instructions to determine that the verdict was not predicated on a finding in plain *180 tiffs’ favor on one of the claims which, for lack of supporting proof, should not have been submitted to it, the verdict must be set aside and a new trial ordered. At the new trial the jury may not consider the two theories of liability for which the evidence was insufficient on the first trial but may consider those theories as to which sufficient evidence was introduced at the previous trial to have warranted a verdict favorable to plaintiffs (Gurney, Becker & Bourne v Benderson Dev. Co., 47 NY2d 995).[4]
With respect to the first theory of liability placed before the jury — erroneous diagnosis of Mrs. Davis’ condition by defendant Caldwell — the record is devoid of proof (and plaintiffs point to none) that the operating surgeon ever made a diagnosis or was ever called on to do so. Although plaintiffs’ contention is that before Mrs. Davis agreed to undergo substantial breast surgery they had been informed, in error, that there was cancerous tissue present, Mrs. Davis herself testified that at no time did Dr. Caldwell make the statement that she had cancer. The evidence was uncontradicted that the preoperative diagnosis, which appeared on the hospital records as “Bilateral mastopathy with calcification suspicious of carcinoma on mammogram [performed May 3, 1976]”,[5] had been made by Dr. Wende Logan, a physician whose practice was limited to diagnosis of breast cancer (not a party to this action), and accepted by the patient’s general surgeon, Dr. Kenneth Chandler (also not a party), by whom cancerous tissue had been removed from Mrs. Davis’ right breast in a biopsy performed in April, 1974, some two years earlier: It was as a result of referral by Dr. Chandler that the Davises met with defendant Caldwell to arrange for the bilateral subcutaneous mastectomy. The record lacks any evidence that Dr. Caldwell participated in the diagnosis which preceded, *181 and had been completed by the time of, her engagement. That being so, it was error for the jury to have been permitted to consider as a basis for an award to plaintiffs an error in diagnosis of Mrs. Davis’ condition by Dr. Caldwell.
In like vein, and again without demonstration by plaintiffs to the contrary, no proof was offered to support a claim that the operation performed on Mrs. Davis was unnecessary, which the court submitted to the jury as the third theory of liability. There was no controversy that cancerous tissue had been found to be present in one of the patient’s breasts about two years earlier at which time she had refused to submit to a mastectomy despite a recommendation of combined treatment by radiation and mastectomy made by both Dr. Chandler, her then attending surgeon, and by the board of the hospital where she was a patient, meeting at its weekly cancer conference. It was also uncontroverted that the mammogram performed by Dr. Logan on May 3, 1976, as part of a program of annual mammograms of Mrs. Davis initiated following the removal of cancerous tissue during the April, 1974 biopsy, disclosed the existence of new calcifications in the right breast suspicious of carcinoma as well as the continued existence of disease previously seen in the left breast. Finally, it was unquestioned that the surgery performed on June 17, 1976 was the least comprehensive and least extensive of the four types of mastectomy employed in cases of cancer or suspected cancer. Absent medical expert evidence offered by plaintiffs, of which there was none, that the surgery was unnecessary in the circumstances present, the claim predicated on such a contention should have been dismissed when defendants moved for such relief at the close of the evidence.
We reach a contrary conclusion with respect to plaintiffs’ claims that liability on the part of defendants might be found to exist (1) by reason of their having failed to conform to the standard of medical care extant in the community when Dr. Caldwell proceeded with Mrs. Davis’ subcutaneous mastectomy without a biopsy of the patient’s breast having first been performed and the results obtained, and (2) by reason of their failing accurately to have advised Mrs. Davis of her condition prior to the operation so *182 that her consent to the surgery might be an informed consent. As to the first of these alleged predicates for liability, plaintiffs produced testimony by the director of breast cancer surgery at one of the Nation’s foremost cancer hospitals that, on the basis of Mrs. Davis’ medical record, in June, 1976 it was not generally accepted medical practice in this State to perform a bilateral subcutaneous mastectomy without first securing a biopsy and that the performance of such an operation on plaintiff without a prior biopsy was a departure from accepted medical practice. In face of such proof the claim based on the omission of a biopsy was properly one for consideration by the jury.
A similar conclusion is warranted with respect to the claim founded on an. alleged failure to have secured an informed consent to the surgery from Mrs. Davis, as to which defendants assert there is a fatal defect in the absence of expert medical testimony attacking the qualitative sufficiency of the consent to the bilateral mastectomy given by Mrs. Davis. In making this assertion defendants rely on CPLR 4401-a, which provides: “A motion for judgment at the end of the plaintiff’s case must be granted as to any cause of action for medical malpractice based solely on lack of informed consent if the plaintiff has failed to adduce expert medical testimony in support of the alleged qualitative insufficiency of the consent.”
Plaintiffs’ theory of liability based on lack of informed consent to Mrs. Davis’ surgery was supported by proof that following the mammogram taken on May 3, 1976 Dr. Chandler informed them that a cancer was present in Mrs. Davis’ right breast, by testimony of Mr. Davis that Dr. Logan (the breast cancer diagnostician) had told them immediately after completion of the mammogram that “there was a very high chance, ninety percent, that the cancer had returned” without mention of a biopsy as a desirable further diagnostic procedure, and by testimony of both plaintiffs that defendant Caldwell had told them that “the cancerous tissue” would be removed during the subcutaneous mastectomy.[6] Additionally, plaintiffs produced *183 evidence to the effect that, prior to Mrs. Davis’ execution of the form provided by defendant hospital on which she signified her consent to the operation, they were not advised that the procedure was to be employed as a preventative measure to alleviate a precancerous — as contrasted with a cancerous — condition, or that the effectiveness of the procedure as a prophylactic measure to forestall the development of carcinoma was a subject as to which there were significant differences of opinion within the medical profession. Neither were they informed that an alternative to the performance of the mastectomy following interpretation of the mammogram of May 3, 1976, which revealed changes in the breast tissue, was the performance of a biopsy to assist in the determination of the nature of the tissue — whether cancerous or noncancerous. Testimony adequate to meet the requirement in CPLR 4401-a of “expert medical testimony in support of the alleged qualitative insufficiency of the consent” was provided by the evidence given by a plastic surgeon experienced in the performance of subcutaneous mastectomies, called by defendants, that a consent to such an operation not preceded by disclosure of the doubtfulness of benefit from the procedure, could not be based on adequate information — thus would not be be an informed consent. The expert who was chief of breast cancer surgery at a cancer hospital, called by plaintiffs, testified that it would be improper medical practice to obtain a patient’s consent to surgery on the basis of advice to her that she had cancer of the breast when in fact she did not have such cancer. On such a record, defendants’ contention that the evidence required by CPLR 4401-a was lacking cannot be sustained.[7]
It follows that the judgment in favor of plaintiffs must be reversed and the case remitted for a new trial. On any such new trial plaintiffs will be precluded, of course, from *184 introducing evidence in support of liability on any theory either that Dr. Caldwell made an erroneous diagnosis or that an unnecessary operation was performed on Mrs. Davis. Plaintiffs will be entitled however again to offer proof to establish that defendants are liable for damages resulting from the surgery performed on Mrs; Davis on June 17, 1976 either by reason of Dr. Caldwell’s having failed to exercise permissible medical judgment and having departed from then accepted medical practice by performing the subcutaneous mastectomy without first performing a biopsy or by reason of the surgery’s having been performed without an informed consent having first been given by the patient, or on any other theory of liability allowable under the pleadings.
For the reasons stated, the order of the Appellate Division should be reversed, with costs to abide the event, the judgment for plaintiffs set aside, and the case remitted to Supreme Court for a new trial in accordance with this opinion.
Chief Judge Cooke, and Judges Jasen, Gabrielli, Wachtler, Fuchsberg and Meyer concur.
Order reversed, etc.

. A mastectomy is surgical removal of part or all of the breast. Subcutaneous means beneath the skin.

. Precisely stated, the trial court termed them five “causes of action”. Such description, however, bore no correlation to what by happenstance were five causes of action alleged in the complaint. From the context in which the language was used it is apparent that “theories of liability” would have been more accurate terminology.

. A biopsy is surgical removal of tissue for diagnostic examination.

. Significantly different legal consequences attend an instruction of the jury as to the plaintiffs’ evidentiary contentions, in effect the equivalent of a marshaling of the evidence (cf. Food Pageant v Consolidated Edison Co., 54 NY2d 167 [decided herewith]).

. Mastopathy is any disease of the breasts. Calcification is a calcium deposit in tissue which may be indicative of a cancerous process. Carcinoma is a medical term for cancer. A mammogram is a diagnostic X-ray examination of the breasts employed to determine the presence of cancerous tissue.

. Plaintiffs’ versions of the conversations with all three of the physicians named were controverted in significant part by the latter. The conflict however *183 simply presented a question of credibility and has no bearing on the issue whether plaintiffs had made out a case for submission to the jury on the claim of lack of informed consent.

. The fourth so-called “cause of action”, described by the trial court as alleging “that the defendants failed to follow accepted standards of medical care in the community in connection with problems of this sort”, in our view stated nothing not already included in the other four “causes of action” and did not constitute an independent theory of liability.