**Ronald GORDON, Appellee,**

v.

**David NOEL, David Bowen, and City of Des Moines, Iowa, Appellants.**

No. 83–158.

Supreme Court of Iowa.

Oct. 17, 1984.

---

J.M. Sullivan, Asst. Des Moines City Atty., for the appellants.

Nick Critelli, Des Moines, for appellee.

Considered by REYNOLDSON, C.J., and HARRIS, McCORMICK, SCHULTZ, and CARTER, JJ.

McCORMICK, Justice.

We granted further review of a decision of the court of appeals affirming a district court judgment for plaintiff to address a question concerning the effect of erroneous submission of one or more but not all theories of action in a multitheory submission when the jury returns a general verdict for the plaintiff. We hold that when a case is submitted on more than one theory of liability, even one of which is erroneously submitted, and the jury returns only a general verdict for the plaintiff, the case ordinarily must be reversed and remanded for new trial. Because the court of appeals adopted a contrary rule in affirming the judgment, we vacate the decision of the court of appeals and reverse the judgment of the district court and remand.

This action arose from an incident that occurred in a Des Moines bar operated by plaintiff Ronald Gordon at approximately 2:00 a.m. on September 27, 1979. Defendants David Noel and David Bowen are Des Moines police vice squad officers who entered the tavern to determine whether it was being operated after the statutory closing time. They were wearing civilian clothes. Gordon pointed a gun at the officers until they identified themselves, and a scuffle subsequently occurred over the gun. Eventually the officers arrested Gordon for being open after hours and on other charges and arrested two other persons on the premises, Rhonda Campbell and Steven Campbell, for intoxication. The charges against the Campbells were later

dismissed, and Gordon was acquitted after a jury trial.

When Gordon's liquor license came up for renewal, defendants provided the city council and a hearing board of the state beer and liquor control department with evidence concerning the September 27th incident. Gordon's license was suspended for 30 days by the city council pursuant to Iowa Code section 123.39 (1979), and the suspension was affirmed first by the hearing board under section 123.32(4) and then by the district court in a judicial review proceeding.

Gordon and the Campbells brought the present action against the officers and the city seeking damages based on these events on several theories. They all sought damages for malicious prosecution and false arrest. Gordon also sought damages for assault and battery and intentional interference with prospective business advantage. The jury returned general verdicts for Gordon for $40,000 against defendants and for defendants against the Campbells. The jury also answered an interrogatory showing no damages were awarded to Gordon under one element in the general damage instruction relating to the intentional interference claim. This appeal by defendants followed. The Campbells are not involved in the appeal.

The questions concern the trial court's instructions on the malicious prosecution claim, the submission of the intentional interference claim, a discovery ruling and instruction on damages, and the effect of the general verdict for Gordon.

■ I. *The malicious prosecution claim.* In instructing the jury on the malicious prosecution claim, the trial court used language from uniform civil jury instruction 18.6 informing the jury that Gordon's acquittal on the criminal charge constituted evidence that would support a finding by the jury that the criminal prosecution was without probable cause. Defendants made a timely objection to the instruction, asserting that an acquittal is not probative on the issue of absence of probable cause. We recently addressed the same question in

*Carter v. MacMillan Oil Co., Inc.,* 355 N.W.2d 52, 56 (Iowa 1984), and our holding in that case disapproving the language of the instruction is dispositive here.

As noted by this court in *Philpot v. Lucas,* 101 Iowa 478, 481, 70 N.W. 625, 626 (1897):

> Probable cause does not depend upon the guilt of the accused party in fact, but upon the honest and reasonable belief of the party commencing the prosecution. . . . [It] is well settled that the discharge of a defendant in a criminal prosecution does not raise even a presumption of want of probable cause. As some of the authorities put it in such a case, the acquittal affords no evidence that such charge was preferred without probable cause. [Citations omitted].

We adhere to that view. Therefore we find that the trial court erred in instructing the jury on the probable cause issue in this case.

■ Defendants also contend that the trial court erred in failing to give two of their requested instructions on the issue of actual malice. In one request they sought an instruction that malice cannot simply be inferred from lack of probable cause. In the other they sought an instruction that if the officers' purpose in initiating the prosecution was otherwise proper, their indignation or resentment toward Gordon, if any, would not subject them to liability. These requested instructions were based on an explanation of the actual malice standard in *Vander Linden v. Crews,* 231 N.W.2d 904, 906 (Iowa 1975). The concepts were applicable under the evidence and not embraced in the court's instructions. Therefore at least the substance of the requested instructions should have been given. *See Adam v. T.I.P. Rural Electric Coop.,* 271 N.W.2d 896, 900 (Iowa 1978). We do not decide, however, whether reversal would be required on this ground.

II. *The intentional interference with prospective business advantage claim.* Gordon's theory on the intentional interference tort was that the police officers gave

false evidence in his liquor license renewal proceeding. Defendants moved for directed verdict on this claim on the ground the officers' alleged false testimony in the license proceeding is not actionable in a civil case and on the ground of insufficiency of the evidence. The trial court overruled their motion, and they contend the court erred.

Gordon argues that the issue is moot because defendants prevailed on the intentional interference claim. He bases that argument on the jury's response to the following special interrogatory:

If you find that the plaintiff, Ronald Gordon, is entitled to recover on his claim for intentional interference with business relationship as set forth in Instruction 21, what portion of your verdict do you allocate for damages as set forth in Instruction No. 31F?

The jury placed a zero in the blank as a response. Gordon alleges this shows the jury found for defendants on the intentional interference claim.

■ We are unable to sustain the mootness claim for two reasons. First, the jury was to answer the interrogatory only if it found in Gordon's favor on the claim. Because the jury answered the interrogatory, we cannot say the particular answer proves the jury did not find defendants liable on that theory of action. Second, the instructions on intentional interference with prospective business advantage did not limit Gordon to the damages specified in instruction 31F. Instruction 31 was a general damages instruction and specified several other elements of damages. It is possible therefore that the jury allowed Gordon recovery for the business tort and awarded damages under the other provisions of instruction 31.

On the merits, we find that the trial court erred in overruling defendants' motion for directed verdict on the intentional interference claim on the ground of insufficiency of evidence. This claim was predicated on the fact the police officers' version of the incident of September 27, 1979, was before the city council and later the beer and liquor control department when these bodies acted on Gordon's application to renew his liquor license. In each instance the information was obtained at the request of the public entity as part of its administrative process. The bodies were informed in each instance that Gordon had been acquitted on the charges resulting from the incident.

■ The tort of intentional interference with prospective business advantage imposes liability on a person who intentionally and improperly interferes with the claimant's business expectancies "whether the interference consists of (a) inducing or otherwise causing a third person not to enter into or continue the prospective relation or (b) preventing the other from acquiring or continuing the prospective relation." *Restatement (Second) of Torts* § 766B (1979); *see Page County Appliance Center v. Honeywell,* 347 N.W.2d 171, 177 (Iowa 1984). In this case Gordon sought to show that his liquor license suspension was induced by false statements to the public bodies by the police officers. If it were not for the decision to suspend his license, he could not establish interference with his business expectancies. Therefore if the licensing decision cannot be impeached he has no intentional interference claim.

■ Gordon had a full and fair opportunity to be heard on the licensing issue before the public bodies charged with making the licensing decision. This included the opportunity to impugn the officers' statements. Adversary proceedings were conducted. With all of the evidence before them, the public bodies made the decision that Gordon's license should be suspended. It was their prerogative to do so. This exercise of independent judgment by the licensing authorities breaks the chain of causation between the officers' allegedly false statements and Gordon's loss of business expectancies. *See Matossian v. Fahmie,* 101 Cal.App.3d 128, 161 Cal.Rptr. 532 (1980); *Carr v. Brown,* 395 A.2d 79 (D.C. 1978); *Hohl v. Mettler,* 62 N.J.Super. 62, 162 A.2d 128 (App.Div.1960). We hold that the trial court erred in overruling defend-

ants' motion for directed verdict on the intentional interference claim.

III. *The discovery and damages issues.* In deposing Gordon, defendants asked him to specify the amount he sought for each element of his damages claim, including an amount for pain and suffering. Upon advice of counsel, Gordon refused to answer the question. Defendants filed a motion to compel an answer, and the trial court required Gordon to specify the amount of his business loss claim but refused to require him to specify the amount claimed for pain and suffering. Defendants contend this ruling was erroneous.

■ Gordon's position is that a plaintiff is never required to specify the amount of a claim for pain and suffering. He argues that this determination always rests in the sole discretion of the trier of fact. It is true that a petition need not reveal the amount of damages claimed. *See* Iowa R.Civ.P. 69(a). Nor can a pleader be required to itemize unliquidated damages in a pleading. Iowa R.Civ.P. 95. This does not mean, however, that such claims are not subject to discovery.

■ Iowa Rule of Civil Procedure 122(a) allows discovery of "any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party...." Notice pleading does not foreclose discovery of relevant evidence; instead it merely enables a party to postpone the necessity of specificity from the pleading to the pretrial stage. *Kester v. Bruns,* 326 N.W.2d 279, 284 (Iowa 1982) ("A party must be specific when requested to do so through appropriate pretrial procedures.").

■ A party defending a claim is clearly entitled upon appropriate pretrial request to be informed of the amount of the claim. Under Federal Rule of Civil Procedure 26(b)(1), the federal counterpart of rule 122(a), this includes discovery of amounts claimed for separate elements of damages. *See, e.g., Hughes v. Groves,* 47 F.R.D. 52,

54 (W.D.Mo.1969); *Lind v. Canada Dry Corp.,* 283 F.Supp. 861, 863 (D.Minn.1968). It is no answer to say that damages for pain and suffering cannot be proved with mathematical certainty. The person who makes the claim can be required to say what the claim is. Whether the person can prove the claim is a separate issue.

■ We agree with defendants that the trial court abused its discretion in refusing to compel Gordon to state the amount of his claim for pain and suffering in this case. Because the case is reversed on other grounds, however, we do not determine whether reversal would be required on this ground.

■ Defendants separately contend that the trial court's error was compounded by error in denying their requested instructions on damages for pain and suffering. They requested that the court instruct that Gordon be "allowed the amount of damages and only such an amount as he has proven by a preponderance of the evidence that he has sustained." The court actually instructed the jury that plaintiffs were entitled to recover "only such damages as have been shown by a preponderance of the evidence to have been sustained as a proximate result of the incident in question." The concept in the requested instruction was thus incorporated in the court's instructions, and no error appears. *See Moser v. Brown,* 249 N.W.2d 612, 616 (Iowa 1977). The court's instruction also sufficiently incorporated the additional concept urged by defendants that Gordon had to prove the amount of his damages.

■ IV. *Effect of the general verdict for Gordon.* Gordon contended and the court of appeals agreed that a general verdict for a plaintiff must be upheld unless reversible error is demonstrated in each theory of recovery submitted. Iowa Rule of Civil Procedure 205 authorizes but does not require special verdicts on separate theories of recovery, and special verdicts were not requested or employed in this case. Rule 206 authorizes the use of interrogatories with a general verdict. Although one

interrogatory was used in this case, it did not require the jury to identify the theory or theories on which recovery was allowed. We have previously followed the rule that when a trial court errs in submitting even one of several theories of recovery and the jury returns only a general verdict for the plaintiff the verdict cannot stand and the defendant is entitled to a new trial. *See, e.g., Dopheide v. Schoeppner*, 163 N.W.2d 360, 364 (Iowa 1968); *In re Will of Overpeck*, 144 Iowa 400, 406, 120 N.W. 1044, 1046 (1909).

In holding to the contrary, the court of appeals relied on *Hudson v. Matthews*, 1 Morris 94 (Iowa 1841), and *Bays v. Herring*, 51 Iowa 286, 1 N.W. 558 (1879). Assuming those cases support the rule applied by the court of appeals, they have never previously been cited for the rule and are aberrant. *Hudson* is of course a territorial case. We now overrule *Hudson* and *Bays* to the extent they are inconsistent with our present holding.

Our rule requiring reversal in this situation is consistent with the rule applied when a jury receives inconsistent instructions, one of which is correct and the other not. In those cases, because it is impossible to tell from a general verdict which instruction the jury followed, reversal is required. *See, e.g., Childers v. McGee*, 306 N.W.2d 778 (Iowa 1981); *Wheatley v. Heideman*, 251 Iowa 695, 102 N.W.2d 343 (1960); *Platt v. City of Ottumwa*, 136 Iowa 221, 113 N.W. 831 (1907). The rule we apply today is followed in the federal courts and in the majority of state courts that have addressed the question.[1]

Gordon argues that plaintiffs should not have the burden to request special verdicts or interrogatories to protect their record when multiple theories of recovery are submitted. We see no reason, however, why a party who seeks recovery on more than one theory should be unwilling to seek such protection. Even without a request, it is desirable for a trial court to use special verdicts or interrogatories in a case like this.

As a fallback argument, Gordon asserts the general verdict in this case was based on his assault and battery claim which was submitted without error. This assertion is based on the jury's denial of recovery to the other plaintiffs on their malicious prosecution and false arrest claims. Gordon reasons that Gordon's similar claims as well as his intentional interference with prospective business advantage claim must also have been rejected, leaving only the assault and battery claim. His malicious prosecution and false arrest claims, however, were based on conduct directed toward him, not against the other plaintiffs, and his right of recovery was not tied to theirs. Moreover, we cannot say in view of the manner in which the business tort was submitted that he was denied recovery on that theory.

1. *Sunkist Growers, Inc. v. Winckler & Smith Citrus Products Co.*, 370 U.S. 19, 82 S.Ct. 1130, 8 L.Ed.2d 305 (1962); *Asbill v. Housing Authority of Choctaw Nation*, 726 F.2d 1499 (10th Cir. 1984); *Ely v. Blevins*, 706 F.2d 479 (4th Cir. 1983); *Royal Typewriter Co. v. Xerographic Supplies Corp.*, 719 F.2d 1092 (11th Cir.1983); *Brochu v. Ortho Pharmaceutical Corporation*, 642 F.2d 652 (1st Cir.1981); *Murphy v. United States*, 653 F.2d 637 (D.C.Cir.1981); *Borger v. Yamaha International Corp.*, 625 F.2d 390 (2d Cir.1980); *E.I. duPont deNemours & Co. v. Berkley and Company, Inc.*, 620 F.2d 1247 (8th Cir.1980); *Hayes v. Solomon*, 597 F.2d 958 (5th Cir.1979); *Ayoub v. Spencer*, 550 F.2d 164 (3d Cir.1977); *Lawndale National Bank v. American Casualty Co.*, 489 F.2d 1384 (7th Cir.1973); *Elder-Beerman Stores Corp. v. Federated Department Stores, Inc.*, 459 F.2d 138 (6th Cir.1972); *Cincinnati Ins. Co. v. Little*, 443 So.2d 891 (Ala.1983); *Mosher v. Schumm*, 114 Colo. 441, 166 P.2d 559 (1946); *District of Columbia v. White*, 442 A.2d 159 (D.C.1982); *Georgia Power Co. v. Busbin*, 242 Ga. 612, 250 S.E.2d 442 (1978); *State v. Hall*, Ind., 432 N.E.2d 679 (1982); *Food Fair Stores, Inc. v. Lascola*, 31 Md.App. 153, 355 A.2d 757 (1976); *Rock v. Derrick*, 51 Mich.App. 704, 216 N.W.2d 496 (1974); *Gonyea v. Duluth, Missabe & Iron Range Ry. Co.*, 220 Minn. 225, 19 N.W.2d 384 (1945); *Circus Circus Hotels, Inc. v. Witherspoon*, Nev., 657 P.2d 101 (1983); *Maccia v. Tynes*, 39 N.J.Super. 1, 120 A.2d 263 (App.Div. 1956); *Davis v. Caldwell*, 54 N.Y.2d 176, 429 N.E.2d 741, 445 N.Y.S.2d 63 (1981); *Johnson v. Northwestern Bell Telephone Co.*, 338 N.W.2d 622 (N.D.1983); *Bredouw v. Jones*, 431 P.2d 413 (Okla.1966); *Reynolds v. Missler*, 79 R.I. 89, 83 A.2d 914 (1951); *Fife v. State*, 676 P.2d 565 (Wyo.1984).

■ Because the trial court erred in instructing on the malicious prosecution claim and in submitting the intentional interference with prospective business advantage claim, reversible error exists. Therefore we vacate the decision of the court of appeals and reverse and remand on the appeal from the judgment.

DECISION OF COURT OF APPEALS VACATED; REVERSED AND REMANDED.

All justices concur except SCHULTZ, J., who concurs in part and dissents in part.

SCHULTZ, Justice (concurring in part and dissenting in part).

I cannot agree that the plaintiff must reveal the specific amount of his claim for pain and suffering; otherwise, I concur.

As the majority opinion points out, Iowa R.Civ.P. 95 states that "[n]o order *shall require* any pleading to itemize or apportion unliquidated damages claimed, nor to attribute any part thereof to any portion of the claim asserted." While I would hold it is proper to discover the total amount of damages claimed, I would not require a party to itemize or apportion unliquidated damages claimed. I recognize that rule 95 is limited to pleading; however, I conclude that the spirit and purpose of the rule spills over into discovery procedures.