■ CHARLES R. VEEDER, Individually and as Executor of YVONNE M. VEEDER, Deceased, Appellant, v COMMUNITY HEALTH PLAN et al., Respondents. [722 NYS2d 106] —Mercure, J. Appeals (1) from two judgments of the Supreme Court (Keegan, J.), entered November 8, 1999 and January 14, 2000 in Albany County, upon a verdict rendered in favor of defendants, and (2) from an order of said court, entered November 29, 1999 in Albany County, which denied plaintiff's motion to set aside the verdict as against the weight of the evidence.

In this action, plaintiff seeks to recover for pecuniary loss, conscious pain and suffering and the wrongful death of his wife, Yvonne M. Veeder (hereinafter decedent), from a pulmonary embolism she suffered on September 12, 1991. The complaint alleges that plaintiff's damages arose out of the malpractice of defendant Community Health Plan (hereinafter CHP), which was decedent's primary health care provider, and defendant Robin Rahm, a surgeon who performed an emergency appendectomy on decedent on August 31, 1991. The matter came on for trial and the jury rendered a verdict in favor of defendants. Supreme Court denied plaintiff's subsequent mo-

tion to set aside the verdict as against the weight of the evidence, and plaintiff now appeals the judgments dismissing the complaint and the order denying the posttrial motion to set aside the verdict.

We affirm. Initially, we conclude that the evidence was legally sufficient to support the verdict and that the verdict was not against the weight of the evidence. "A verdict in favor of a defendant, particularly in the context of a negligence action, will only be set aside as against the weight of the evidence if it can be shown that a preponderance of the proof presented at trial so strongly favored the plaintiff's case 'that a contrary verdict could not have been reached upon any fair interpretation of that evidence'" (*Savage v Snell*, 257 AD2d 794, 794, quoting *Maisonet v Kelly*, 228 AD2d 780, 781; *see*, *Lolik v Big V Supermarkets*, 86 NY2d 744, 745-746). Similarly, on a motion for judgment as a matter of law, the evidence must be viewed in a light most favorable to the defendants, accepting as true all of their evidence and resolving all credibility issues and inferences in their favor, and then a determination must be made that the jury could not find for defendants by any rational process (*see*, *Baker v Shepard*, 276 AD2d 873, 875). In either case, if supported by any credible evidence, the jury's interpretation will be afforded great deference and will not be disturbed even if there is evidence in the record to support a contrary conclusion (*see*, *Monahan v Devaul*, 271 AD2d 895, 896).

The primary discrepancy in the medical evidence presented by plaintiff from that presented by defendants related to the accuracy of Rahm's initial diagnosis of appendicitis and defendants' subsequent failure to diagnose a pulmonary embolism when decedent contacted CHP on September 11, 1991. According to plaintiff's medical expert, Arthur Davidson, defendants misdiagnosed decedent's initial condition. According to Davidson, had defendants performed a CT scan and a sonogram, they would have realized that decedent suffered from an abscess on her kidney, which was causing blood clots. Davidson opined that defendants deviated from good and accepted medical practice in failing to allow for an adequate period of observation before performing the appendectomy, in performing the appendectomy, in failing to perform a CT scan and a sonogram, and in failing to have decedent examined by a physician based upon the complaints that she expressed at the time of her September 11, 1991 visit.

In response, defendants rely upon the testimony of Rahm, medical expert Thomas Gouge, pathologist Harbans Singh and

nurse Connie Strazzi, who testified as a witness for plaintiff. According to Gouge, decedent was suffering from appendicitis, as confirmed by Singh's postoperative pathological examination, and immediate emergency surgical intervention was appropriate. In addition, decedent suffered from salpingitis, an inflammation of the fallopian tube, for which she received a course of antibiotics. Gouge also refuted Davidson's testimony concerning the source of the emboli that caused decedent's death. In Gouge's opinion, decedent did not have a perinephric abscess, and the emboli originated in decedent's pelvic veins and not her renal or kidney veins. Finally, defendants presented compelling evidence that on September 11, 1991, decedent expressed no complaint of shortness of breath, thereby eliminating the basis for Davidson's opinion that decedent should have been seen by a physician at the time of her September 11, 1991 visit. In our view, the evidence presented by defendants provided a legally sufficient basis for the jury's determination, which was not against the weight of the evidence.

To the extent that they may be preserved for our consideration, we reject plaintiff's contentions that Supreme Court erred in its supplemental charge to the jury and in using a general verdict form. The supplemental charge correctly instructed the jury that its determination as to whether defendants engaged in "acceptable medical practice" was to be determined from the expert medical testimony and not from the juror's own personal beliefs (*see, Schrempf v State of New York*, 66 NY2d 289, 295-297; *Perkins v Kearney*, 155 AD2d 191, 192-193). Further, the holding of the Court of Appeals in *Davis v Caldwell* (54 NY2d 176) has no reasonable application in a case resulting in a defense verdict. Plaintiff's remaining contentions are not preserved for our consideration.

Cardona, P. J., Crew III, Spain and Mugglin, JJ., concur. Ordered that the judgments and order are affirmed, with costs.